UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

FILED
IN CLERKS OFFICE

2005 MAR 11  P 1: 43

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| JUSTIN COOK,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CRUISECOMPETE, LLC,<br>HEIDI ALLISON-GARRETT,<br>ERIC BUSICK, and<br>ROBERT A. LEVINSTEIN,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:05-CV-10443-JLT

ORAL ARGUMENT REQUESTED

## DEFENDANTS' MEMORANDUM OF REASONS IN SUPPORT OF THEIR MOTION TO DISMISS, AND IN THE ALTERNATIVE TO TRANSFER VENUE

### PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1 Defendants CruiseCompete, LLC ("CruiseCompete"), Heidi Allison-Garrett ("Allison-Garrett"), Eric Busick ("Busick") and Robert A. Levinstein ("Levinstein") (CruiseCompete, Allison-Garrett, Busick and Levinstein are collectively "the Defendants", Allison-Garrett, Busick and Levinstein are collectively "the Individual Defendants") submit their statement of reasons in support of their motion to dismiss plaintiff Justin Cook's ("Cook") Verified Complaint and Demand for Jury Trial and in the alternative, to transfer this action to the United States District Court for the Southern District of Iowa (Central Division).  In addition, Defendants submit herewith the affidavits of Timothy Cutler, Heidi Allison-Garrett, Eric Busick, Robert A. Levinstein and Daniel C. Hohler in support of the motion.

Cook's Verified Complaint is nothing more than a retributive lawsuit by Cook, a former

1

member of CruiseCompete, LLC, an Iowa limited liability company. Cook was removed for
cause by all of its remaining members, the Individual Defendants (who reside in Iowa and
Michigan) under CruiseCompete's Operating Agreement ("the Operating Agreement"), which is
expressly governed by Iowa law. Defendants do not hide from Cook in defending against his
claims. Indeed, there is a proper forum: The United States District Court for the Southern
District of Iowa (Central Division). All of the parties have agreed in the Operating Agreement
that jurisdiction of any dispute concerning CruiseCompete shall be in Iowa.

     The Defendants' motion to dismiss should be granted inasmuch as: (1) the parties have
entered into a forum selection clause requiring that this matter be dismissed, or in the alternative,
transferred to the United States District Court for the Southern District of Iowa (Central
Division); and (2) Cook has failed to state a claim upon which relief can be granted.

PROCEDURAL HISTORY

     This action was originally filed in Suffolk County Superior Court in Boston,
Massachusetts and was removed to this Court on March 9, 2005 by the Defendants on the basis
of diversity jurisdiction pursuant to 28 U.S.C. §§1332 and 1446. Defendants now move to
dismiss this action or in the alternative to transfer this action to the United States District Court
for the Southern District of Iowa.

FACTS[1]

     On or about September 14, 2003, Cook accepted membership in CruiseCompete, an Iowa
limited liability company with its principal place of business in Des Moines, Iowa.
CruiseCompete is a startup company that prior to Cook's removal had four members: Levinstein

---

[1] For purposes of this motion only, Defendants accept the facts as alleged by plaintiff as true as is required when
considering a Motion to Dismiss. To the extent that the Court concludes that the Operating Agreement or any other
facts outside the four corners of the Verified Complaint should be referenced in dismissing the plaintiff's claims, the
Defendants respectfully request that the Court convert the motion to a motion for summary judgment pursuant to
Fed. R. Civ. P. 12(b).

2

residing in Iowa with a 33.33% interest, Allison-Garrett residing in Michigan with a 28.34%

interest, Busick residing in Iowa with a 33.33% interest, and Cook with a 5% interest. *See*

Verified Complaint, Exhibit 2, Article 3.1. The Operating Agreement of CruiseCompete, which

is attached to the Verified Complaint and incorporated as part of the Verified Complaint by

reference, contains a governing law and forum selection clause which states as follows:

> "This Agreement shall be governed by and construed in accordance with the laws of the
> State of Iowa. Each Member, by signing this Agreement, *hereby submit* to the personal
> and subject matte (sic) jurisdiction *in the State of Iowa of any dispute* between or among
> the Members, the LLC, and the LLC Managers connected to or regarding the business of,
> or investment in the LLC." (emphasis supplied)

The Operating Agreement, and in particular, the choice of law and forum selection clauses are of

extreme import since it was agreed between and among the members of CruiseCompete that the

Operating Agreement would ensure that all disputes would be heard in Iowa and that Iowa law

would govern. *See* Levinstein Aff. ¶5, Allison-Garrett Aff. ¶3, Busick Aff.¶3 and Cutler Aff.

¶¶3,5.

In addition to capital contributions, all of the members of CruiseCompete are required to

perform services as part of their contribution. In Cook's case, in addition to his capital

contribution of $5.00, he was required to perform "*on going* consulting on search engine position

and purchase of web traffic, including *on going* monitoring and adjusting of search engine

strategy." *See* Verified Complaint, Exhibit 2, Attachment 1, Table 2. Cook, however, avers in

his Verified Complaint that at the time of the issuance of his interest in CruiseCompete, his

"services were completed." *See* Verified Complaint, ¶ 18. This allegation that he had performed

all services completely contradicts the express terms of the Operating Agreement, which requires

*on-going* services, and completely undermine the factual underpinnings of his claims. *See*

Verified Complaint, Exhibit 2. The entire basis of Cook's Verified Complaint is his

3

acknowledgement that he did not perform any ongoing services, based upon his assertion,

directly contrary to the Operating Agreement, that he had no obligation to perform any services.

On November 8, 2004, CruiseCompete sent an email to Cook proposing to purchase his

5% share in CruiseCompete for $5,000.00 because, in the alternative his shares would be

purchased for less (as 5% of CruiseCompete was not worth $5,000), as a result of Cook's breach

of his obligation to provide on-going services. In that email CruiseCompete wrote, among other

things, the following:

> "We haven't seen a significant contribution from you over the past year, and we don't
> believe that this is likely to change. The current situation has the three of us doing all the
> work while continuing to pay you, and we're not willing to let that continue." *See*
> Verified Complaint, Exhibit 3.

On November 12, 2004, CruiseCompete initiated the precise steps provided for in the

Operating Agreement to remove Cook for his continued failure to perform under the Operating

Agreement. *See* Verified Complaint, Exhibit 4.   In the November 12, 2004 letter,

CruiseCompete wrote to Cook setting out his failures:

> "Your initial responsibilities were to provide regular, on-going consulting on search
> engine positioning, and the management of the purchase of web traffic.  Your efforts
> under the first task have been sporadic at best.  Members have complained about the lack
> of organization in the information that you have submitted as well as the impracticality of
> suggestions, and the majority membership is aware of no value the organization has
> derived from your efforts over the past year.  Your lack of attention to detail in managing
> the purchase of web traffic via pay-per-click search engines necessitated that this
> responsibility be handled by other members.  The majority members are aware of no
> other projects related to the purchase of web traffic that you have brought to fruition.
> You have also exhibited a general lack of planning and follow-through in all of your
> efforts." *Id.*

CruiseCompete, however, provided Cook with an opportunity to cure his lack of

performance and wrote in that same letter:

> "In order to give you the broadest possible opportunity to correct your failure to perform,
> we place no strictures on the form of remedial action.  Any significant positive
> contribution to either revenue generation or cost savings over the next thirty days will be

4

considered provided it is documented and submitted along with a detailed, credible action plan for you to carry out in 2005." *Id.*

Cook makes no allegation that he undertook any corrective action; in fact, just the opposite – that he had performed all of his services, and therefore, that no further services were required. Cook makes no allegation that CruiseCompete has refused to pay the fair market value of his shares. Indeed, there is an arbitration pending in Des Moines, Iowa concerning the valuation of Mr. Cook's 5% interest in CruiseCompete pursuant to Article 7.5.

Accordingly, for the reasons stated below the motion should be <u>allowed</u> and the action should be <u>dismissed</u> or in the alternative transferred to the United States District Court for the Southern District of Iowa (Central Division).

ARGUMENT

I.  COOK'S VERIFIED COMPLAINT SHOULD BE DISMISSED BASED UPON THE FORUM SELECTION CLAUSE CONTAINED IN THE OPERATING AGREEMENT OR IN THE ALTERNATIVE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA.

A. Cook's Verified Complaint Should Be Dismissed Based Upon The Forum Selection Clause Contained In CruiseCompete's Operating Agreement.

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) inasmuch as this matter is subject to a forum-selection clause contained in the Operating Agreement of CruiseCompete, LLC, at Article 10.4. *See* Verified Complaint, Exhibit 2. Contractual forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 386 (1st Cir. 2001) (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972). The forum selection clause states as follows:

"Each Member, by signing this Agreement, *hereby submit* to the personal and subject

5

matte (sic) jurisdiction *in the State of Iowa of any dispute* between or among the Members, the LLC, and the LLC Managers connected to or regarding the business of, or investment in the LLC." (emphasis supplied)

The forum selection clause is enforceable and mandatory.  Similar language, in isolation, has been held to be permissive. *See De Energia Electrica De P.R. v. Ericsson Inc.*, 201 F.3d 15, 18 (1st Cir. 2000); *Redondo Construction Corp. v. Banco Exterior de Espana S.A.*, 11 F.3d 3, 5 (1st Cir. 1993). (similar language to be permissive and not mandatory).  However, a deciding factor here, not present in the First Circuit cases interpreting otherwise permissive forum selection clauses, is that the Operating Agreement at issue in this case contains a comprehensive collection of forum selection clauses with respect to arbitration of all disputes concerning valuation of members' shares in Cruise Compete upon death, divorce or removal of a member. The clauses provide in pertinent part that such arbitrations "shall be in Des Moines, Iowa or any other place agreed to by the parties." *See* Verified Complaint, Exhibit 2, Article 7.3(c), 7.4(e) and 7.5(f).  When read together with Article 10.4 concerning forum selection in Iowa, the Operating Agreement makes clear that all disputes are to resolved in Iowa.  It is inconsistent that the parties would intend to have disputes concerning the valuation of a removed member's shares subject to a mandatory forum selection clause, if they did not also intend for disputes relating to such removal to be subject to a mandatory forum selection clause.  Accordingly, when read as a whole, the Operating Agreement must be read consistently that the parties intended for their disputes to be held exclusively in Iowa, and not inconsistently to have some disputes exclusively in Iowa and not others.

To the extent there is any question about the proper interpretation of the forum selection provision, extrinsic evidence eliminates any doubt.  Under Massachusetts, applicable as procedural law in this case based upon diversity jurisdiction, this Court need not determine that

6

the language is ambiguous to accept extrinsic evidence: "[w]hen the written agreement, as applied to the subject matter, is in any respects uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms." *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1264 (1st Cir. 1991)(quoting *Keating v. Stadium Management Corp.*, 24 Mass. App. Ct. 246, 249-50, 508 N.E.2d 121, 123 (1987), *rev. denied*, 400 Mass. 1104, 511 N.E.2d 620 (1987) (quoting *Robert Industries, Inc. v. Spence*, 362 Mass. 751, 753-54, 291 N.E.2d 407 (1973)); *See also Swiss Colony, Inc. v. Promotion Fulfillment Corp.*, 32 F. Supp. 2d 1088, 1091 (S.D. Iowa 1998) (Iowa law).

Here, the parties' negotiations, discussions and agreements between and amongst each other demonstrate that all of the parties understood and agreed that the intent and effect of the forum selection clause was to be mandatory, not permissive.   Prior to entering into the Operating Agreement, CruiseCompete, LLC retained Timothy Cutler, Esquire, to review the Operating Agreement with all of the members, including Cook.  According to Cutler, Levinstein, Allison-Garrett, and Busick, the intent of the forum selection and choice of law provisions at Article 10.4 was to provide for an exclusive forum of Iowa for all disputes to heard there and for Iowa law to be applied to such cases.  *See* Levinstein Aff. ¶5, Allison-Garrett Aff. ¶3, Busick Aff. ¶3 and Cutler Aff. ¶¶3,5.  There were specific conversations with Cook in which it was discussed and agreed that the intent of the Operating Agreement was to require that all disputes be brought in Iowa and that Iowa law would control.  Cutler Aff. ¶¶3,5.  Levinstein Aff. ¶5.  Accordingly, either based upon the plain language of the forum selection clause, construed with the contract as a whole, or based upon the intent of the parties, this Court should determine that the clause is mandatory and Cook's claims should be dismissed.

7

Where, as here, the clause is mandatory this Court should dismiss the action unless "enforcement would be unreasonable and unjust, or . . . the clause [is] invalid for such reasons as fraud or overreaching." *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 386 (1st Cir. 2001). In determining whether a forum selection clause is "reasonable, just and freely entered into" this Court has weighed six factors: (i) the law governing the contract in question; (ii) the place of execution of the contract; (iii) the place where the transactions have been or will be performed; (iv) the availability of remedies in the contractually designated forum; (v) the public policy of the plaintiff's choice of forum state; (vi) the location of the parties, convenience of witnesses and accessibility of evidence; (vii) the relative bargaining power of the parties and the circumstances of their negotiations; (viii) the presence of fraud or other undue influence; and (ix) the conduct of the parties. *Doe v. Seacamp Association, Inc.,* 276 F. Supp. 2d 222, 225 (D. Mass. 2003).

The balance of the factors here overwhelmingly favors enforcement of the forum selection clause. First, the law of the state of Iowa governs this matter via the Operating Agreement, which states in pertinent part that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Iowa." *See* Verified Complaint, Exhibit 2, Article 10.4. Second, the Operating Agreement was executed in Iowa, since the last act of contract formation by Cook was mailing the signature page of the contract to CruiseCompete in Iowa. Performance of the contract is not so much at issue since Cook is alleging acts and omissions occurring in Iowa and Michigan, not Massachusetts, and Cook has conceded that he did not perform on-going services, based on his claim contrary to the Operating Agreement, that no on-going services were required. Fourth, the availability of remedies in the contractually-designated forum in Iowa are identical to the remedies in available in Massachusetts. Fifth, there is no compelling public policy consideration in support of Massachusetts in retaining jurisdiction

8

over this matter instead of Iowa.  In fact, Iowa has more of an interest in retaining jurisdiction over this matter because it involves an Iowa LLC with its principal place of business in Iowa and the laws of the State of Iowa will control.   Sixth, with the exception of Cook and Mr. Cutler, the parties and witnesses to this matter are not located in Massachusetts, and either reside in and/or prefer Iowa as the forum for this matter, or in the case of one witness, Mr. Malt, it would appear to make no difference.  In addition, "the standard for declining to enforce a forum selection clause because of inconvenience to one of the parties does not apply to situations in which it simply may be difficult or expensive for the party seeking an alternative forum to litigate in the contractual forum." *Doe,* 276 F. Supp. 2d at 226.  Instead, Cook "must be able to show that [he] would suffer such serious inconvenience in litigating in the selected forum that [he] is effectively deprived of his day in court.'" *Id.*  With respect to the remaining factors, the relative bargaining power of the parties is equal and Cook actively participated in the review and negotiation of the agreement. *See* Cutler Aff. ¶¶4-6.  Furthermore, there are no allegations of fraud or coercion with respect to the respect to the forum selection clause in the Operating Agreement.  Finally, the conduct of the parties warrants enforcement where it was all of the parties' understanding that the intent of the forum selection clause was to establish a forum to adjudicate all of the internal disputes of CruiseCompete. Levinstein Aff. ¶5,  Allison-Garrett Aff. ¶3, Busick Aff. ¶3 and Cutler Aff. ¶¶3,5.

Accordingly, the motion to dismiss should be <u>allowed</u> and the Verified Complaint should be <u>dismissed</u>.

B. In the Alternative, This Court Should Transfer The Action To The United States District Court For The Southern District Of Iowa (Central Division) Pursuant To 28 U.S.C. §1404(a).

Even if the Court were to determine that the Verified Complaint should not be dismissed, Defendants in the alternative move that this matter be transferred to the United States District Court for the Southern District of Iowa (Central Division) under principles of *forum non conveniens* as codified by 28 U.S.C. §1404(a).  Pursuant to 28 U.S.C. §1404(a), "for the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether to enforce a forum-selection clause and transfer a case is one of federal law. *Stewart Org., Inc. v. Ricoh,* 487 U.S. at 32, 108 S. Ct. at 2245.  The decision to transfer should be made on a case-by-case basis.  In its analysis, this Court must balance the convenience of the parties, the convenience of the witnesses, and public interest factors which are generally subsumed under the category "the interest of justice." *Id.* at 29-31, 108 S. Ct. at 224.  Such private and public interest factors include, but are not limited to, "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Royal Bed and Spring Co. v. Famossul Industria,* 906 F.2d 45, 51 (1st Cir. 1990)(quoting *Gulf Oil. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)).  Public interest factors include: "administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.  Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home." *Id.*

10

Notably, while a plaintiff's choice of forum is ordinarily given deference by the courts, the existence of a forum-selection clause is "a significant factor that figures centrally in the district court's calculus." *Stewart,* 487 U.S. at 29, 108 S. Ct. at 2244; *Royal Bed and Spring Co. v. Famossul Industria,* 906 F.2d 45, 51 (1st Cir. 1990). Such a clause should be given considerable weight in the balance of factors. *Stewart,* 487 U.S. at 33, 108 S. Ct. at 2246 (A valid forum-selection clause should be "given controlling weight in all but the most exceptional cases.") (Kennedy, J., concurring). Although Defendants submit that the forum selection clause at issue is mandatory (especially when placed in context of the Operating Agreement), even if it were permissive it should be given significant weight, especially in the context of the parties understanding of the agreement and its intended purpose.

While in *Trans Nat'l Travel v. Sun Pac. Int'l,* 10 F. Supp. 2d 79, 82 (D. Mass. 1998), this Court found that a permissive forum selection clause was "not dispositive" and refused to transfer an action under a 28 U.S.C. §1404(a) transfer analysis, it also stated "...the Court of Appeals for the First Circuit has yet to address the impact forum selection clauses have in the context of Section 1404 transfer determinations." *Id.* While the First Circuit Court of Appeals has not directly addressed the issue of the significance of a choice of forum clause that is permissive as opposed to mandatory, in a motion to transfer (as opposed to dismiss) other federal courts have held that, under *Stewart,* the district court must determine for itself how much weight to attach to the forum selection clause to determine whether it tips the scale in favor of transfer. *Terra Int'l Corp. v. Mississippi Chemical Co.,* 922 F.Supp 1334,1374-75 (S.D. Iowa 1996)("Even a 'permissive' forum selection clause is indicative of the parties' preference for a particular forum. Furthermore, it is important to distinguish between circumstances in which a court is called upon to 'enforce' a forum selection clause by dismissing an action for improper

11

venue, and the situation presented here, in which a party seeks to rely upon the forum selection

clause as tipping the balance in favor of the stated forum in the court's discretionary weighing of

all relevant factors under §1404(a)... The court therefore finds in its discretionary power to grant

a transfer, the authority to consider a merely "permissive" forum selection clause as weighing

'significantly' in the 'transfer calculus.'"). *Kachal, Inc. v. Menzie*, 738 F. Supp. 371, 374 (D.

Nev. 1990) ("Even though the Court was considering a mandatory forum selection clause,...the

rationale in *Stewart* is instructive where the forum selection clause is permissive and the District

Court must decide how much weight to attach to the clause in the balancing of the §1404(a)

factors"). For the reasons stated in Part II, A, *supra*, the clause is mandatory and should be

enforced, but even if it were viewed as permissive, the Court should give the forum selection

clause significant weight in the calculus of the Defendants' motion to transfer this action to the

United States District Court for the Southern District of Iowa.

    In addition, the other factors weigh heavily in favor of transferring this matter as set forth

below.

    1.  The Convenience Of The Parties Favors Transfer To United States District Court For The Southern District Of Iowa.

    The United States District Court for the Southern District of Iowa (Central Division) is a

more convenient forum for the majority of the parties. Defendants CruiseCompete, LLC, Busick

and Levinstein all are located in Des Moines, Iowa, where the transferee Court sits.

Additionally, defendant Allison-Garrett is located in Rochester, Michigan, which is much closer

to Iowa, as opposed to Massachusetts which is geographically distant. Most of the documents

and evidence concerning this matter are located in Iowa. This dispute concerns ownership and

operation of a limited liability company operating out of offices in Iowa. In addition, all of the

parties have submitted to personal and subject matter jurisdiction to courts in Iowa making

jurisdiction and venue proper there. Indeed, the entire purpose of a forum selection clause is to

agree to a <u>convenient</u> <u>forum</u> in advance for the resolution of the disputes of all of the parties and

evidences the parties' intent that such forum is the most convenient forum.

2. The Convenience To The Witnesses Favors Transfer To The United States District
   Court For The Southern District Of Iowa.

"Convenience of the witnesses is probably the most important factor, and the factor most

frequently mentioned." *Atari v. UPS*, 211 F. Supp. 2d 360, 362 (D. Mass. 2002). In evaluating

this factor, "the court must consider the number of potential witnesses located in both the

transferor and the transferee district, the nature and quality of their testimony, and whether the

witnesses can be compelled to testify. A party seeking transfer on this basis must, therefore,

specify the key witnesses to be called, accompanied by a general statement as to what their

testimony will entail." *Id.*

Convenience of the witnesses, most of which are also parties, favors transfer. With the

exception of Cook and two potential witness, Mr. Cutler, who is also located in Massachusetts,

and Mr. Robert C. Malt, an appraiser in Florida, all of the remaining witnesses are parties and

percipient witnesses, and are either located in Des Moines, Iowa or intended to litigate all

disputes concerning CruiseCompete there, making this litigation more convenient for the

majority of the percipient witnesses. *See* Hohler Aff. ¶¶2 and 3; Levinstein Aff. ¶¶2, 4 and 5,

Allison-Garrett Aff. ¶¶2-4; and Busick Aff. ¶¶2-4. With the exception of the plaintiff and Mr.

Cutler, depositions of these witnesses will be more convenient in that forum, and a trial located

in Des Moines would also be more convenient. With respect to Mr. Malt, it would appear there

is no difference as to the location of the deposition or trial. Again, all of the parties, who also

may be called as witnesses, agreed in the Operating Agreement to submit their disputes to

13

personal and subject matter jurisdiction to courts in Iowa, evidencing that Iowa is a convenient forum for all parties concerned.

3.    Public and Private Factors Favor Transfer Of This Action To United States District Court For The Southern District Of Iowa(Central Division).

The private interests of the litigants favor transferring the case to the United States District Court for the Southern District of Iowa. First, the relative ease of access to sources of proof is enhanced in Iowa where the principal office and files of CruiseCompete are located. Compulsory process of witnesses is somewhat easier in the Southern District of Iowa where all of the parties have already subjected themselves to the jurisdiction of the transferee Court. In Iowa, the cost of attendance for willing witnesses will be greatly reduced overall, and if the premises needs to be viewed they are located in Des Moines. Moreover, all other practical problems that make trial of a case easy, expeditious and inexpensive point in favor of litigating in Des Moines where the locus of events and proof centers around the State of Iowa.

The public interest favors transfer to United States District Court for the Southern District of Iowa. This matter is, at its core, an internal dispute between members and a former member of an Iowa limited liability company which is governed by Iowa law and is subject to a forum selection clause. Accordingly, this is a localized dispute that should be decided in a local court in Iowa.

Accordingly, the Defendants respectfully submit that the motion to transfer should be allowed and this action should be transferred to the United States District Court for the Southern District of Iowa.

14

II.    COOK'S VERIFIED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
       STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

   A. The Standard Of Review

       When considering a motion to dismiss pursuant to Rule 12(b)(6), the court takes all

well-pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's

favor. See *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 40 (1st Cir. 1998).

However, the court should not consider "subjective characterizations or conclusory descriptions

of a general scenario which could be dominated by unpleaded facts." *Murphy v. United States*,

45 F.3d 520, 522 (1st Cir. 1995) (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st

Cir. 1992)).  The Court should also not credit "bald assertions, unsupportable conclusions, or

opprobrious epithets." *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987). To avoid

dismissal, the plaintiff must allege facts as to each element of an actionable legal theory.  *See

Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).  The district court is also "not required to

accept as true conclusory allegations in the complaint which are contradicted by the clear import

of the contract itself."  *See Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135

F.3d 658, 665 (9th Cir. 1998)(Dissent, Tashima, J.)(*citing Durning v. First Boston Corp.,* 815

F.2d 1265, 1267 (9th Cir. 1987).  Where the Operating Agreement is attached to the Verified

Complaint, it may properly be considered by the Court in ruling on a motion to dismiss inasmuch

as exhibits are properly considered part of the pleadings for rule 12(b)(6) purposes." *In re Lane*,

937 F.2d 694, 695 (1st Cir. 1991); *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument

which is an exhibit to a pleading is a part thereof for all purposes.").

B. All Counts Of The Verified Complaint Should Be Dismissed Because The
Allegations Contained In The Complaint Belie The Fact That Cook Failed To
Continue To Perform His Duties Under CruiseCompete, LLC's Operating
Agreement Undermining The Factual Underpinnings Of His Complaint.

Cook's Verified Complaint should be dismissed on the merits because the factual

precondition of his complaint is contradicted by the plaint terms of the Operating Agreement

which he has attached to his Verified Complaint, and therefore, considered by this Court.

Indeed, the crux of Cook's complaint is that he was removed without just cause from

CruiseCompete by the members improperly and that he is entitled to retain his 5% interest in

CruiseCompete because he "accepted payment" of a 5% interest in CruiseCompete by providing

internet and consulting services. Accepting this as true for purposes of this motion only,

however, Cook's interest was not simply a 5% stockholder interest. Rather, with Cook's 5%

interest in CruiseCompete came member obligations, and Cook was required so long as he was a

member to provide "*on going* consulting on search engine position and purchase of web traffic,

including *on going* monitoring and adjusting of search engine strategy." *See* Verified Complaint,

Exhibit 2, Attachment 1. However, Cook avers in his Verified Complaint that he owed no

additional services to CruiseCompete inasmuch as at the time of his issuance of interest in

CruiseCompete "…Cook's services were *completed*." Verified Complaint, ¶ ¶ 13, 18 (emphasis

supplied); *see also* Verified Complaint ¶¶ 23, 27, 31, and 35. Cook also alleges that "Levinstein

initiated the process to remove Cook as a member of the LLC, under the allegation that he had

failed to perform *additional uncontracted* services to [CruiseCompete]." *See* Verified

Complaint, ¶17 (emphasis supplied).

Where Cook has averred that no further services were warranted in contravention of the

plain terms of the Operating Agreement, all of the plaintiffs' claims fail since there can be no

breach of fiduciary duty, fraud, violation of Mass. Gen. L. ch. 93A, or basis for a shareholder

16

derivative action by the Defendants' exercise of their rights under the Operating Agreement premised upon Cook's baseless and self-contradicted allegation that all of his services were completed, where such additional services were contemplated by the Operating Agreement and his removal admittedly is self imposed.

Accordingly, the motion to dismiss should be <u>allowed</u> and the Verified Complaint should be <u>dismissed</u>.

### C. Counts V through VIII, Alleging Fraud Must Be Dismissed For Lack Of Pleading <u>With Particularity.</u>

Pursuant to Fed. R. Civ. P. 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This heightened pleading standard is satisfied by an averment "of the who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004)(*quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)). The heightened pleading requirement for allegations of fraud is required "in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." *Doyle v. Hasbro, Inc.,* 103 F.3d 186,194 (1st Cir. 1996) (*citing McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980). Indeed, "[m]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Doyle,* 103 F.3d at 194 (*quoting Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

Here, Cook's allegations of fraud are conclusory and not pleaded with particularity.   In

each of the counts of fraud, Cook alleges that each defendant: (1) "had misrepresented Cook into believing that for performance of computer service, Cook would receive interests in the LLC. Cook agreed to take these interests in lieu of cash."; (2) that "after performing the requisite services and receiving the LLC unit interests, [each defendant] then embarked upon a plan to reacquire these interests at a diminished value in comparison to the services provided."; and (3) that each defendant "never intended to pay the Cook the value of his services." See Verified Complaint, paragraphs 40-42, 46-48, 52-54, and 58-60.   Cook's bald allegations of "misrepresentations" and allegations of a "plan" to reacquire interests without more is insufficiently pleaded to satisfy Rule 9(b). *See Doyle,* 103 F.3d at 194

Accordingly, the motion to dismiss should be allowed and Counts V, VI, VII and VIII of the Verified Complaint should be dismissed.

D. Count IX, Violation of Mass. Gen. L. Ch. 93A Should Be Dismissed Inasmuch As The Allegations Concern An Intra-Entity Dispute Not Subject To Mass. Gen. L. ch. 93A, §11.

It is well-settled in Massachusetts that inter-entity disputes are not actionable under Mass. Gen. L. ch. 93A, §11. *See Petricca Dev. Ltd. Pshp. v. Pioneer Dev. Co.*, 214 F.3d 216, 223 (1st Cir. 2000) ("Chapter 93A generally is applicable only to business dealings 'between discrete, independent business entities,' not to 'disputes between parties in the same…venture,' as the latter are not regarded as having arisen in 'trade or commerce.'); *Kurker v. Hill,*  44 Mass. App. Ct. 184, 191, 689 N.E.2d 833,838 (1998) (holding that complaint for freezing out plaintiff was properly dismissed because it is "principally a private grievance,…an internal business dispute,…which was outside the conduct of any 'trade or commerce' within the meaning of G. L. c. 93A, § 11.")(*quoting First Enterprises, Ltd. v. Cooper*, 425 Mass. 344, 348, 680 N.E.2d 1163 (1997) *and Zimmerman v. Bogoff*, 402 Mass. 650, 663, 524 N.E.2d 849 (1988)).  The pleadings

18

allege nothing more than actions taken by CruiseCompete and its members relating to the removal of Cook for cause and the redemption of his membership units. Such disputes are not within the purview of Chapter 93A.

Accordingly, the motion to dismiss should be <u>allowed</u> and Count IX should be <u>dismissed</u>.

      E. Count X, Shareholder Derivative Action Must Be Dismissed Because Cook Was
        <u>Not A Member of CruiseCompete At The Time Of The Filing Of This Action.</u>

Cook's derivative action (Count X) should be dismissed because he does not meet the statutory prerequisites to bring a derivative action. CruiseCompete is an Iowa LLC, and therefore, the rights of its members are governed by Iowa law. Under Iowa law, a member of an Iowa Limited Liability Company can only bring a derivative action under, among other conditions, where "[t]he plaintiff is a member of the limited liability company *at the time of bringing the action* and was a member of the limited liability company at the time of the transaction of which the plaintiff complains..." *Iowa Code § 490A.1001* (2003)(emphasis supplied). The instant lawsuit was filed on or about February 4, 2005. Cook was not a member of the LLC at the time of the filing of the suit, and therefore, he is unable as a matter of law to bring a derivative action. In addition, Cook's counsel has indicated to Defendants' counsel that he intends to voluntarily dismiss this count.

Accordingly, the motion to dismiss should be <u>allowed</u> and Count X should be <u>dismissed</u>.

WHEREFORE, for the aforementioned reasons, the Defendants respectfully submit that

the motion to dismiss should be allowed and the Verified Complaint dismissed, or in the

alternative that this matter be transferred to the United States District Court for the Southern

District of Iowa (Central Division).

SPECIALLY APPEARING
DEFENDANTS CRUISECOMPETE LLC,
HEIDI ALLISON-GARRETT, ERIC
BUSICK AND ROBERT A. LEVINSTEIN,

By their attorney,

```
CERTIFICATE OF SERVICE

    I, Daniel C. Hohler, hereby certify that
a copy of the aforementioned document was
served via HAND/FIRST CLASS MAIL, postage
prepaid, on all attorneys of record.

_____

Date: 3/11/05
```

Daniel C. Hohler (BBO#633065)
233 Needham Street, Suite 300
Newton, MA 02464
Tel: (617) 454-1450
Fax: (617) 454-1451
Email: dhohler@hohlerlaw.com

Dated: March 11, 2005

20