MAS-20030912
leakes

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

03/10/2005
10:09 AM

# SUCV2005-00450
## Cook v Cruisecomplete LLC et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 02/04/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 03/10/2005 | **Session** | B - Civil B | | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/05/2005 | **Answer** | 07/04/2005 | **Rule12/19/20** | 07/04/2005 |
| **Rule 15** | 07/04/2005 | **Discovery** | 12/01/2005 | **Rule 56** | 12/31/2005 |
| **Final PTC** | 01/30/2006 | **Disposition** | 03/31/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Justin Cook
Active 02/04/2005

**Private Counsel 541847**
Marc D Padellaro
Monahan & Padellaro
Bulfinch Square
43 Thorndike Street
East Cambridge, MA 02141-1714
Phone: 617-494-1188
Fax: 617-494-0433
Active 02/07/2005 Notify

**Defendant**
Cruisecomplete LLC
Service pending 02/04/2005

**Private Counsel 633065**
Daniel C Hohler
220 Boylston Street
Chestnut Hill, MA 02467
Phone: 617-969-2900
Fax: 617-454-1451
Active 03/10/2005 Notify

**Defendant**
Heidi Allison Garrett
Service pending 02/04/2005

*** See Attorney Information Above ***

**Defendant**
Eric Busick
Service pending 02/04/2005

*** See Attorney Information Above ***

MAS-20030912

leakes

# Commonwealth of Massachusetts
## SUFFOLK SUPERIOR COURT
### Case Summary
### Civil Docket

03/10/2005

10:09 AM

## SUCV2005-00450
## Cook v Cruisecomplete LLC et al

| **Defendant**<br>Robert A Levinstein<br>Service pending 02/04/2005 | *** See Attorney Information Above *** |
|---|---|

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 02/04/2005 | 1.0 | Complaint  & Jury demand |
| 02/04/2005 | | Origin 1, Type B99, Track F. |
| 02/04/2005 | 2.0 | Civil action cover sheet filed |
| 03/09/2005 | | Certified copy of Petition for removal to the US Dist Court of defts |
| | | (US Dist# 05-10443JLT) |
| 03/10/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

. HEREBY ATTEST AND CERTIFY ON

3 10 05 _____ THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASS. CLERK

**1**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK. SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

**05-0450 -/ ̣**

| | |
|---|---|
| JUSTIN COOK. | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| CRUISECOMPETE, LLC. | ) |
| HEIDI ALLISON GARRETT. | ) |
| ERIC BUSICK. | ) |
| and ROBERT A. LEVINSTEIN, | ) |
| Defendants | ) |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### Introductory Statement

1.    This is a civil action for breach of fiduciary duty and fraud in the inducement of a contract as a result of work performed by the Plaintiff, Justin Cook, in providing search engine optimization services to the Defendants in exchange for common stock in the Limited Liability Company "CruiseCompete, LLC".

### Jurisdiction and Venue

2.    This Court has jurisdiction over this matter pursuant to **M.G.L. c. 223A, Section 3, M.G.L. c.212, Sections 3,4,** and **M.G.L. c.213, Section 1A et.seq..**

3.    This Court is the proper venue for this matter pursuant to **M.G.L. c.223, Section 1.**

### Parties to this Action

4.    The Plaintiff, **Justin Cook,** (hereinafter referred to as Cook) is an individual with a principal place of business at 58 Campbell Avenue, Suite 2, Revere, Massachusetts, and is engaged in the internet consulting business in the Commonwealth of Massachusetts.

5.    The Defendant, **CruiseCompete, LLC,** (hereinafter referred to as CruiseCompete) is an Iowa Domestic Limited Liability Company with a principal place of business at 673 61st Street, Des Moines, Iowa 50312 and other offices in Boston, Massachusetts and the State of Michigan. (See Exhibit **1**).

6.    The Defendant, **Heidi Allison Garrett,** (hereinafter referred to as Garrett) is a
      shareholder and principal of CruiseCompete with a principal place of business at 460
      Thorn Ridge Drive, Rochester, Michigan, 483017.

7.    The Defendant, **Eric Busick,** (hereinafter referred to as Busick) is a shareholder and
      principal of CruiseCompete with a principal place of business at 673 61st Street, Des
      Moines, Iowa 50312.

8.    The Defendant, **Robert A. Levinstein,** (hereinafter referred to as Levinstein) is a
      shareholder and principal of CruiseCompete with a principal place of business at 673 61st
      Street, Des Moines, Iowa 50312.

### Facts Common to All Counts

9.    On or before **May 6, 2003,** CruiseCompete contacted Cook in Massachusetts and
      engaged Cook to perform computer internet services for its business operations. Cook
      performed those services out of Massachusetts.

10.   Lacking cash to pay for said services or unwilling to pay for the services, Robert A.
      Levinstein, as promoter of CruiseCompete offered, and Cook accepted payment in the
      form of a five (5%) percent interest in the Limited Liability Company that was formed to
      incorporate CruiseCompete.

11.   On or about **May 6, 2003,** the Articles of Organization governing the Defendant's LLC,
      was filed with the Iowa Secretary of State's Office. (See Exhibit **I**).

12.   At or about the same time CruiseCompete finalized its operating agreement. That
      operating agreement indicates that Cook was granted 50 LLC units which represented
      five (5%) percent of the LLC units outstanding at the time of incorporation. (See Exhibit
      **2**)

13.   These LLC units were granted to Cook upon his substantial completion of all computer
      related services for CruiseCompete; subsequent to issuance, Cook's services were
      completed.

14.   Recently, on information and belief, due to the initial success of the Company,
      CruiseCompete has been the subject of a potential buyout at a stock price greatly in
      excess of the current stock value of the Company.

15.   After this potential interested purchaser appeared, Robert A. Levinstein, Managing
      Partner of CruiseCompete demanded that Cook sell his interest of the stock in the LLC
      for $5,000.00, a price substantially lower than the anticipated sale price to the potential
      buyer. (See Exhibit **3**)

16.    When Cook advised Garrett of his unwillingness to accept the demand referenced in
       Paragraph 15, Levinstein sent an email to Cook threatening that if he refused to sell his
       interest, various actions would be taken against him to either diminish or eliminate his
       five (5%) percent interest in CruiseCompete.  (See Exhibit **3**).

17.    Subsequent to that threatening email, Levinstein then emailed another letter, purportedly
       invoking Section 7.5 of the Operating Agreement, (at Exhibit I).  Pursuant to that section,
       Levinstein initiated the process to remove Cook as a member of the LLC, under the
       allegation that he had failed to perform additional uncontracted services to the Company.
       (See Exhibit **4**).

18.    Cook had substantially completed all services to the LLC at the time he was awarded his
       interest in the LLC; subsequent to issuance, Cook's services were completed.

19.    On information and belief, CruiseCompete and its members never intended to pay for the
       services that they contracted with Cook for and which he rendered, due to the LLC's and
       the individual defendants' intent to invoke the operating agreement to remove Cook as a
       member without just cause.

20.    On information and belief, based upon the Exhibit 3, all of the individual members of the
       LLC that are individual defendants participated in this breach of fiduciary duty and
       attempt to diminish the value of Cook's LLC units.

### Count I
### Breach of Fiduciary Duty
### Justin Cook vs. CruiseCompete, LLC

21.    Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded
       herein.

22.    Cook and CruiseCompete entered into a valid contract for which Cook was compensated
       with a five (5%) percent intesest in the LLC units of CruiseCompete.

23.    Pursuant to that agreement Cook provided computer internet services and consulting to
       CruiseCompete that have been completed.

24..   Cook has earned the fees per the contract, represented by the five (5%) percent interest in
       CruiseCompete and CruiseCompete's attempt to dilute or diminish the value of that
       interest is a breach of the fiduciary duty owed by each member of the LLC to each other.

       **WHEREFORE,** Cook prays that this Honorable Court award judgment in its favor and
       also award Cook:

       a)    statutory interest

b)    attorney's fees
c)    and costs of this action
d)    enjoin the defendants from taking any action to dilute or reduce the plaintiff's interest in the corporation.

## Count II
## Breach of Fiduciary Duty
## Justin Cook vs. Heidi Allison Garrett

25.    Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

26.    Cook and Garrett entered into a valid contract for which Cook was compensated with a five (5%) percent interest in the LLC units of CruiseCompete.

27.    Pursuant to that agreement Cook provided computer internet services to CruiseCompete that have been completed.

28.    Cook has earned the fees per the contract, represented by the five (5%) percent interest in CruiseCompete and CruiseCompete's attempt to dilute or diminish the value of that interest is a breach of the fiduciary duty owed by each member of the LLC to each other.

**WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and also award Cook:

a)    statutory interest
b)    attorney's fees
c)    and costs of this action
d)    enjoin the defendants from taking any action to dilute or reduce the plaintiff's interest in the corporation.

## Count III
## Breach of Fiduciary Duty
## Justin Cook vs. Eric Busick

29.    Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

30..    Cook and Busick entered into a valid contract for which Cook was compensated with a five (5%) percent interest in the LLC units of CruiseCompete.

31.    Pursuant to that agreement Cook provided computer internet services to CruiseCompete that have been completed.

32.   Cook has earned the fees per the contract, represented by the five (5%) percent interest in
      CruiseCompete and CruiseCompete's attempt to dilute or diminish the value of that
      interest is a breach of the fiduciary duty owed by each member of the LLC to each other.

      **WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and
      also award Cook:

      a)    statutory interest
      b)    attorney's fees
      c)    and costs of this action
      d)    enjoin the defendants from taking any action to dilute or reduce the plaintiff's
            interest in the corporation.

### Count IV
### Breach of Fiduciary Duty
### Justin Cook vs. Robert A. Levinstein

33.   Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded
      herein.

34.   Cook and Levinstein entered into a valid contract for which Cook was compensated with
      a five (5%) percent interest in the LLC units of CruiseCompete.

35.   Pursuant to that agreement Cook provided computer internet services to CruiseCompete
      that have been completed.

36.   Cook has earned the fees per the contract, represented by the five (5%) percent interest in
      CruiseCompete and CruiseCompete's attempt to dilute or diminish the value of that
      interest is a breach of the fiduciary duty owed by each member of the LLC to each other.

      **WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and
      also award Cook:

      a)    statutory interest
      b)    attorney's fees
      c)    and costs of this action
      d)    enjoin the defendants from taking any action to dilute or reduce the plaintiff's
            interest in the corporation.

### Count V
### Fraud
### Justin Cook vs. CruiseCompete, LLC

37.   Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded

herein.

38.   At all relevant times, Cook was and is engaged in the computer internet and consulting
      business in the Commonwealth of Massachusetts.

39.   At all relevant times, CruiseCompete, contracted with Cook to perform services for it by
      contacting Cook in Massachusetts.

40.   By its course of dealing with Cook CruiseCompete had misrepresented Cook into
      believing that for performance of computer internet and consulting services, Cook would
      receive interests in the LLC.  Cook agreed to take these interests, in lieu of cash.

41.   After performing the requisite services and receiving the LLC unit interests,
      CruiseCompete then embarked upon a plan to reacquire these interests at a diminished
      value in comparison to the services provided.

42.   CruiseCompete never intended to pay Cook the value of his services.

      **WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and
      also award Cook:

      a)   statutory interest
      b)   attorney's fees
      c)   treble damages and costs of this action
      d)   enjoin the defendants from taking any action to dilute or reduce the plaintiff's
           interest in the corporation.

                            **Count VI**
                             **Fraud**
                  **Justin Cook vs. Heidi Garrett**

43.   Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded
      herein.

44.   At all relevant times, Cook was and is engaged in the computer internet and consulting
      business in the Commonwealth of Massachusetts.

45.   At all relevant times, Garrett, contracted with Cook to perform services for it by
      contacting Cook in Massachusetts.

46.   By its course of dealing with Cook, Garrett had misrepresented Cook into believing that
      for performance of computer services, Cook would receive interests in the LLC.  Cook
      agreed to take these interests, in lieu of cash.

47.   After performing the requisite services and receiving the LLC unit interests, Garrett then embarked upon a plan to reacquire these interests at a diminished value in comparison to the services provided.

48.   Garrett never intended to pay Cook the value of his services.

**WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and also award Cook:

a)   statutory interest
b)   attorney's fees
c)   treble damages and costs of this action
d)   enjoin the defendants from taking any action to dilute or reduce the plaintiff's interest in the corporation.

**Count VII**
**Fraud**
**Justin Cook vs. Eric Busick**

49.   Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

50.   At all relevant times, Cook was and is engaged in the computer internet and consulting business in the Commonwealth of Massachusetts.

51.   At all relevant times, Busick, contracted with Cook to perform services for it by contacting Cook in Massachusetts.

52.   By its course of dealing with Cook, Busick had misrepresented Cook into believing that for performance of computer services, Cook would receive interests in the LLC. Cook agreed to take these interests, in lieu of cash.

53.   After performing the requisite services and receiving the LLC unit interests, Busick then embarked upon a plan to reacquire these interests at a diminished value in comparison to the services provided.

54.   Busick never intended to pay Cook the value of his services.

**WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and also award Cook:

a)   statutory interest
b)   attorney's fees
c)   treble damages and costs of this action

    d)     enjoin the defendants from taking any action to dilute or reduce the plaintiff's interest in the corporation.

**Count VIII**
**Fraud**
**Justin Cook vs. Robert A. Levinstein**

55.    Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

56.    At all relevant times, Cook was and is engaged in the computer internet business in the Commonwealth of Massachusetts.

57.    At all relevant times, Robert Levinstein, contracted with Cook to perform services for it by contacting Cook in Massachusetts.

58.    By its course of dealing with Cook, Levinstein had misrepresented Cook into believing that for performance of computer services, Cook would receive interests in the LLC. Cook agreed to take these interests, in lieu of cash.

59.    After performing the requisite services and receiving the LLC unit interests, Levinstein then embarked upon a plan to reacquire these interests at a diminished value in comparison to the services provided.

60.    Levinstein never intended to pay Cook the value of his services

      **WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and also award Cook:

    a)     statutory interest
    b)     attorney's fees
    c)     treble damages and costs of this action
    d)     enjoin the defendants from taking any action to dilute or reduce the plaintiff's interest in the corporation.

**Count IX**
**Violation of M.G.L. Chatper 93A**
**Justin Cook vs. CruiseCompete, LLC**

61.    Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

62.    At all relevant times, Cook was and is engaged in the website design business in the

Commonwealth of Massachusetts.

63. At all relevant times. CruiseCompete. contracted with Cook to perform services for it by contacting Cook in Massachusetts.

64. At all relevant times. CruiseCompete was engaged in the business in Massachusetts. including maintaining an office in Massachusetts.

65. CruiseCompete's attempt to dilute or diminish the value of amounts of LLC interests owned by Cook as payment of its contracted services is an unfair and deceptive business practice.

66. At the time of contacting with Cook, CruiseCompete's misrepresentation of offering stock in lieu of payment with no intention of offering a fair value of the stock is an unfair and deceptive business practice.

**WHEREFORE,** the Plaintiff demands treble damages, costs and attorney's fees.

**Count X**
**Shareholders Derivative Action**
**Justin Cook vs. CruiseCompete, LLC, Heidi Garrett,**
**Eric Busick and Robert A. Levinstein**

67. Cook reaffirms and re-alleges the preceding paragraphs and incorporates them as pleaded herein.

68. The individual defendants are at all times-the other stockholders, principals and directors of the Defendant CruiseCompete. LLC.

69. The Plaintiff brings this action as a stockholder of the corporation.

70. On behalf of all the other members of the Defendant CruiseCompete, Robert A. Levinstein forwarded an email and fax to minority member Justin Cook adopting an effort to remove minority stockholder Justin Cook from the Defendant CruiseCompete or diluting his interest in CruiseCompete, LLC. (Email and fax attached hereto).

71. The action as set forth in the paragraph above is illegal in that the plaintiff Justin Cook has violated no terms of the operating agreement and the letter is in breach of the fiduciary duties owed to Justin Cook.

72. The action as set forth above is the result of the Defendants attempting to wrongfully exclude the Plaintiff from the proceeds of any sale.

73. The Plaintiff has contacted the Defendants in an effort to resolve the claim. However,

due to the fact that the defendants threatening action and deceptive actions would make any further efforts futile, the Plaintiff has made no further attempts to contact the Defendants. The Plaintiff has fully performed, has no further obligations and the Defendants have refused to honor their commitment.

**WHEREFORE,** Cook prays that this Honorable Court award judgment in his favor and also award Cook:

a)    statutory interest
b)    attorney's fees
c)    treble damages and costs of this action
d)    enjoin the defendants from taking any action to dilute or reduce the plaintiff's
       interest in the corporation.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,
PLAINTIFF, JUSTIN COOK

By his attorney:

Marc D. Padellaro - BBO #541847
Monahan & Padellaro
43 Thorndike St.
Cambridge, MA 02141
Tel: (617) 494-1188
Fax:(617)494-0433

I HEREBY ATTEST AND CERTIFY ON 3.10.05 , THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.
MICHAEL JOSEPH DONOVAN CLERK / MAGISTRATE SUFFOLK SUPERIOR CIVIL COURT DEPARTMENT OF THE TRIAL COURT
BY: Asst. Clerk.

## VERIFICATION OF COMPLAINT

I, Justin Cook, the Plaintiff in this matter, do hereby declare that I have read the foregoing complaint and know the contents thereof. The same is true to my knowledge except to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under the pains and penalties of perjury that the foregoing is true and correct and that this declaration was executed on this 4th day of **January, 2005.**

Justin Cook

Dated: January 4, 2005
C:\My Documents\Mass Complaints\Justin Cook v. CruiseComplete 2nd Complaint.wpd

**Page 10**

# EXHIBIT 1

2 79506

RECEIVED
SECRETARY OF STATE
IOWA
03 MAY -6 AM 11: 26

# ARTICLES OF ORGANIZATION
OF
CruiseCompete, LLC

**TO THE SECRETARY OF STATE OF THE STATE OF IOWA:**

Pursuant to Sections 301 and 303 of the Iowa Limited Liability Company Act, Chapter 490A of the 2003 Code of Iowa, The undersigned adopts the following articles of organization for the company.

## ARTICLE I
## NAME

The name of the limited liability company is CruiseCompete, LLC.

## ARTICLE II
## REGISTERED OFFICE AND AGENT

The street address of Company's initial registered office and the name of its initial registered agent at such address is Robert A. Levinstein, 673 61st Street, Des Moines, IA 50312.

## ARTICLE III
## PRINCIPAL OFFICE

The street address of Company's principal office is 673 61st Street, Des Moines, IA 50312.

## ARTICLE IV
## PERIOD OF DURATION

The Company's existence shall begin upon the acceptance of these Articles of Organization by the Secretary of State of Iowa for filing in accordance with The Iowa Limited Liability Company Act and shall continue, unless dissolved sooner in accordance with the terms of Company's Operating Agreement, for a period of 99 years.



00865

Articles of Organization
CruiseCompete, LLC
May 6, 2002

## ARTICLE V
## MANAGERS

A.  The business and affairs of Company shall be governed by Managers elected by the
    Members in the manner described in Company's Operating Agreement. No Member's
    action nor any other person's action shall bind Company except as authorized by
    Company's Operating Agreement.

B.  The Managers shall have all of the duties, powers, and authority as set forth in
    Company's Operating Agreement.

## ARTICLE VI
## NONLIABILITY AND INDEMNIFCATION

A.  No Member or Manager of Company's shall be personally responsible or liable for
    any of the acts, debts, liabilities, or losses of Company.

B.  No manager of Company shall be personally responsible or liable to Company or its
    Members or anyone else for monetary damages for breach of fiduciary duty as a
    Manager except for liability (i) for any breach of the Manager's duty of loyalty to
    Company or its Members, (ii) for acts or omissions not in good faith or which involve
    intentional Misconduct or a knowing violation of law, (iii) for a transaction from
    which the Manager derived an improper personal benefit, or a, wrongful distribution
    in violation of section 807 off the Iowa Limited Liability Company Act.

C.  Each person who is or was a Manager of Company (and the heirs, executors, personal
    representatives, administrators, or successors of such person) who was or is made a
    party to, or is involved in any threatened, pending or completed action, suit or
    proceeding, whether civil, criminal, administrative or investigative, by reason of it
    fact that such person is or was a Manager of Company or is or was serving at the
    request of Company as a manager, director, officer, partner, trustee, employee or
    agent of another limited liability company, corporation, partnership, joint venture,
    trust, employee benefit plan or other enterprise ("Indemnitee"), shall be indemnified
    and held harmless by Company to the fullest extent permitted by applicable law, as
    the same exists or may hereafter be amended. In addition to the indemnification
    conferred in this Article, the Indemnitee shall also be entitled to have paid directly by
    Company the expenses reasonably incurred in defending any such proceeding against
    such Indemnitee in advance of its final disposition, to the fullest extent authorized by
    applicable law, as the same exists or may hereafter be amended. The right to
    indemnification conferred in this Article shall be a contract right.

00856

2

Articles of Organization
CruiseCompete, LLC
May 6, 2003

D. The Company may, by action of the Managers, provide indemnification to such of the officers, employees and agents of Company to such extent and to such effect as the managers shall determine to be appropriate and authorized by applicable law.

E. The rights and authority conferred in this Article shall not be exclusive of any other right which any person may have or subsequently acquire under any statute, provision of the Articles of Organization or Operating Agreement of Company, agreement, vote of Members or disinterested Managers, or otherwise.

F. Any repeal or amendment of this Article by the Members of Company shall not adversely affect any right or protection of a Manager or officer existing at the time of such repeal or amendment.

**IN WITNESS WHEREOF,** the aforesaid organizer has caused the execution of the foregoing Articles of Organization on this 6th day of May 2003.

Robert A. Levinstein
Organizer

FILED
IOWA
SECRETARY OF STATE
5-6.03
11:20AM
W348637

00867

3

# EXHIBIT 2

# OPERATING AGREEMENT
# OF
# CRUISECOMPETE, LLC

Upon valuable consideration, the persons named below as "Members" hereby covenant and agree to be bound to the following as their LIMITED LIABILITY COMPANY OPERATING AGREEMENT dated this [[th]]day of September, 2003 (this "Agreement" or this "Operating Agreement") for CRUISECOMPETE, LLC, a limited liability company organized under the laws of the State of Iowa (hereinafter known as "the LLC"):

## ARTICLE I
## DEFINITIONS

As used in this Operating Agreement, the following terms are to have the meaning as stated below:

**"LLC"** means "Limited Liability Company" and **"the LLC"** means CruiseCompete, LLC.

**"LLC Units" or "Units"** means measures of ownership in the LLC. The capital structure of the LLC shall consist of Units all of the same class with equal rights for all purposes under this Operating Agreement.

**"LLC Unit Percentage"** means, with respect to an LLC member, the percentage derived from the following fraction: number of LLC Units held by such Member divided by the total number of LLC Units held by all Members (and, thereafter, multiplying said fraction by 100 to arrive at a percentage).

**"State Law"** means the laws of the State of Iowa.

**"Vote in interest of LLC members"** means a vote of the LLC members in which each LLC member shall have one vote per LLC Unit possessed; for example, a member possessing 150 LLC Units would have 150 votes in interest.

## ARTICLE II
## GENERAL PROVISIONS

**Section 2.1** <u>Formation</u>. Articles of Organization either already have been filed with the appropriate State office or shall shortly be done so. The Members shall execute or cause to be executed all other instruments, certificates, notices and documents as may now or hereafter be required for the formation, valid existence and, when appropriate, termination of the LLC as a limited liability company under the laws of the State of Iowa.

**Section 2.2** Company Name. The name of the LLC is "CruiseCompete, LLC" or such other name or names as may be selected by the Members from time to time, and its business shall be carried on in such name with such variations and changes as the Members deem prudent.

**Section 2.3** Purpose of the LLC. The purpose of the LLC is to engage in any lawful act or activity for which a limited liability company may be organized under the laws of the State of Iowa including, but not limited to, Operation of an Internet company.

**Section 2.4** Place of Business. The business address of the LLC shall be determined by the Members. The LLC may from time to time have such other place or places of business, within or without the State of Iowa, as the Members may decide.

**Section 2.5** Registered Agent. The initial registered agent and registered office of the LLC shall be as follows:

    **Robert Levinstein**
    673 61st Street
    Des Moines, Iowa 50312

The Members may remove or replace the LLC registered agent at any time.

**Section 2.6** Business Transactions of a Member with the Company. A Member may lend money to, borrow money from, act as surety, guarantor or endorser for, guarantee or assume one or more obligations of, provide collateral for, and transact other business with, the LLC and, subject to applicable law, shall have the same rights and obligations with respect to any such matter as a Person who is not a Member.

**Section 2.7** Company Property. No real or other property of the LLC shall be deemed to be owned by any Member individually, but shall be owned by and title shall be vested solely in the LLC.

**Section 2.8** No Term To Existence. The LLC's existence shall commence on the date of the filing of the Article of Organization with the appropriate state office and, thereafter, the LLC's existence shall be perpetual without term.

**Section 2.9** Accounting Period. The close of the LLC's year for financial statement and federal income tax purposes shall be as determined by the Members.

**ARTICLE III**
**MEMBERS**

**Section 3.1** Members. The name, initial capital contribution, LLC Units and LLC Unit Percentage of the Members are set forth in the below table, which shall be amended from time to time to reflect the admission of new Members.

| Member Name | Initial Capital Contribution | LLC Units | LLC Unit % |
| --- | --- | --- | --- |

| Eric Busick | $ 33.33 | 333.333 | 33.3333% |
|-------------|---------|---------|----------|
| Heidi Garrett | $ 28.33 | 283.334 | 28.3334% |
| Robert Levinstein | $ 33.33 | 333.333 | 33.3333% |
| Justin Cook | $ 5.00 | 50 | 5.0% |

**Section 3.2** <u>Admission of New Members</u>. New members may be admitted to the LLC by an affirmative vote in interest by the LLC members of LLC Unit in excess of 50% (i.e. 50.1% or greater) vote in interest of LLC members as defined in Section 3.5 of this agreement.

**Section 3.3** <u>No Liability of Members</u>. All debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the LLC, and no member shall be obligated personally for any such debt, obligation or liability of the LLC solely by reason of being a member. This section does not prevent an LLC member, should he or she so choose, from separately agreeing to guaranty or otherwise become liable for a debt which is also one of the LLC.

**Section 3.4** <u>Access to Books and Records of LLC</u>. Each LLC member shall have the right to inspect the books and records of the LLC during normal business hours after the giving of reasonable notice of this intent to the LLC custodian of said documents and information; however, each member gaining access to the books and records of the LLC shall hold this information confidential and only use LLC information for the furtherance of LLC business and interests or for making investment decisions regarding the member's LLC interest. Upon withdrawal or departure as a member of an LLC, a member shall deliver all LLC books and records in his or her possession to the remaining LLC members or managers.

**Section 3.5** <u>Actions by the Members; Meetings; Quorum</u>.

    a. The LLC members may take any action at a meeting in person, by proxy, or without a meeting by written resolution in accordance with Section 3.5(d). Meetings of LLC members may be conducted in person or by telephone conference. A voting proxy given by an LLC Member to another person must be in writing.

    b. <u>Voting</u>. Each LLC member shall be entitled to vote upon all matters for which LLC members have the right to vote. All LLC member votes shall be tallied by interest under which each member shall be entitled to one vote for each LLC Unit possessed (for example, a member possessing 150 LLC Units shall be entitled to 150 votes upon any matter submitted to the LLC Members for a vote). Each vote per LLC Unit shall carry the same weight and have the same value, for voting purposes, as every other LLC Unit. Should state law create statutory situations where LLC member votes are to be taken on a one vote per member basis, votes per member (as opposed to per LLC Unit interest) shall be limited to those specific circumstances under which state law requires such a vote.

c. Unless another percentage is given elsewhere in this operating agreement or by state law, all LLC member votes on any matter shall require an affirmative vote in interest by LLC members of LLC Unit in excess of 50% (i.e. 50.1% or greater) of the outstanding total to pass or approve the motion, resolution, or otherwise take action by the LLC members. For example, if there are 1000 LLC Units outstanding, a vote of 50.1 LLC Units in favor of a resolution is required for its passage unless the resolution involves a matter for which this operating agreement or state law requires a higher percentage.

d. Any action required or permitted to be taken at any meeting of the Members may be taken without a meeting if Members with the percentage of votes (per LLC units) sufficient to approve the action pursuant to the terms of this Agreement resolve thereto in writing and the writing or writings are filed with the LLC records of actions taken by Members. In no instance where action is authorized by written resolution shall it be required that a meeting of Members be called or notice be given; however, upon passage, a copy of the action taken by written resolution of the members shall be sent promptly to all LLC members.

e. Meetings of Members may be called by any LLC member, or members, collectively holding 25% or more of the outstanding LLC Units upon seven (7) days written notice to the other LLC members. Notice of a meeting called for hereunder may be made by standard U.S. mail, electronic mail, or facsimile transmission and shall contain the time, place, and purpose of such meeting. A quorum for any action to be taken at a meeting of LLC members shall be LLC members present (in person, via telephone, or by proxy) holding more than 50% of the LLC Units. Any Member may through a written instrument waive the right to receive prior notice of a meeting of the Members as described herein.

**Section 3.6** Power to Bind the LLC. No LLC member or group of members acting in their individual capacity--separate and apart from action as LLC members pursuant to this operating agreement--shall have any authority to bind the LLC to any third party with respect to any matter.

**Section 3.7** Members who are not individuals. Each Member who is an artificial entity or otherwise not an individual hereby represents and warrants to the LLC and each Member that such Member is: (a) duly incorporated or formed (as the case may be), (b) validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation, and (c) has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

**Section 3.8** Tax Matters Partner. Robert Levinstein is hereby designated as the LLC's "Tax Matters Partner" under Section 6231(a)(7) of the Internal Revenue Code of 1986, as amended (the "Code"), and shall have all the powers and responsibilities of such position as provided in the Code and the Treasury Regulations thereunder. The LLC members may remove or replace the Tax Matters Partner by a vote of the majority in interest.

### ARTICLE IV
### MANAGEMENT

**Section 4.1** <u>Management of the LLC.</u> This LLC shall be managed by "managers" who are appointed by a majority vote (more than 50% of the outstanding LLC Units) of the LLC members; however, the LLC members reserve the right to revert to a "member managed" LLC at a later date. The number of managers to be acting at any given time shall be set by vote of the LLC members. Managers, absent another length set by vote of the LLC members, shall serve for one-year terms subject to removal for cause as set forth in Section 4.5. Other than for cause or at the end of a term, any manager maybe removed by the affirmative vote in interest by LLC members of more than 50% of the outstanding LLC Units. Subject to such matters as are expressly reserved hereunder to the Members for decision under Section 4.3 of this Agreement, all matters in the ordinary course of business of the LLC shall be determined by the managers. The managers, and their terms of employment including compensation, shall be approved by a majority vote in interest of LLC members. The LLC members shall remain responsible for policy setting and approval of the overall direction of the LLC. An LLC member may also be a "manager".

**Section 4.2** <u>Initial Managers.</u> The initial manager of the LLC shall be: Robert Levinstein.

**Section 4.3** <u>Matters reserved for the Members.</u> All business and matters not within the ordinary course of business of the LLC shall be reserved to the LLC members including, but not limited to, the following list of reserved matters:

    a.  the declaration or payment, directly or indirectly, of any distribution (other than Tax Distributions), whether in cash, property or securities or a combination thereof, with respect to any LLC Unit (whether by reduction of capital or otherwise);

    b.  any transaction with a Member other than in the ordinary course of business on terms no less favorable to the Company than those which would otherwise be available from an unaffiliated third party;

    c.  approval of the annual operating budget of the LLC;

    d.  approval of any expense in excess of $7500;

    e.  approval of any capital expenditure in excess of $7500;

    f.  approval of the leasing of any asset whose annual lease payments shall exceed $10000;

    g.  approval of the incurrence of any indebtedness or obligations with a principal amount in excess of $10000;

    h.  approval of any contract or agreement with a potential monetary value in excess of $25000;

    i.  entering into any new line of business;

    j.  any matter otherwise within the Manager's authority and regarding which a majority in interest of the members have voted to reserve for themselves.

**Section 4.4** <u>Power to Bind Company.</u> No Manager or group of Managers (acting in his or their capacity as such) shall have any authority to bind the LLC to any third party with respect to any matter **except** pursuant to an affirmative vote of a majority in interest of

the members.

**Section 4.5** Removal of Managers. Any Manager may be removed without "cause" at any time during his or her term by the affirmative vote of a majority in interest of LLC members. Managers who are not reappointed by the LLC Members at the end of their term shall, also, be effectively removed from office at the expiration of their term. Any Manager may be removed with "cause" at any time during his or her term by the affirmative vote of a majority in interest of LLC members. For "cause" includes malfeasances, breach of fiduciary duty, fraud, charge of crime constituting a felony or worse, and self-dealing.

**Section 4.6** Employees. Except as otherwise provided for in this agreement or through a duly passed resolution by the LLC Members, the Managers shall have the power to hire and fire employees of the LLC.

**Section 4.7** No Liability of Managers. All debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the LLC, and no Manager shall be obligated personally for any such debt, obligation or liability of the LLC solely by reason of being a Manager.

## ARTICLE V
## CAPITAL STRUCTURE

**Section 5.1** Capital Structure. The capital structure of the LLC shall consist of one class of LLC Units each having equal rights under all provisions of this operating agreement.

**Section 5.2** LLC Units. 1000 LLC Units shall be issued to the Members, as set forth in Section 3.1 hereof, as part of the initial funding of the LLC.

**Section 5.3** Capital Contributions.

a. Each Member shall contribute or shall have contributed, as an initial capital contribution ("Initial Capital Contribution") to the LLC the amounts set forth below. The break-down between cash and non-cash contributions by the Members is as set forth in Table 2 of Attachment 1 hereto.

| Member Name | Initial Capital Contribution |
|---|---|
| Eric Busick | $ 33.33 |
| Heidi Garrett | $ 28.33 |
| Robert Levinstein | $ 33.33 |
| Justin Cook | $ 5.00 |

b. The Members shall complete their initial capital contributions to the capital contributions to the LLC within 20 days of the date of this agreement unless

another date is agreed upon in writing by all the LLC Members. Any Member who fails to make the required initial capital contribution as set forth in this paragraph shall indemnify all other Members of the LLC for any losses or expenses (including reasonable attorneys fees) that are caused by the failure to make the initial capital contribution as set forth herein.

**Section 5.4** <u>Additional Capital Contributions</u>. Members may make additional capital contributions but shall not be required to do so.

**Section 5.5** <u>Raising Additional Capital</u>. Additional capital may be raised by the LLC through sales of new LLC Units pursuant to an affirmative majority Vote of LLC Members. Any Member resolution authorizing the raising of additional capital through the sale of LLC Units shall state, in reasonable detail, the purposes and uses of such additional capital and the amounts of additional capital required.

**Section 5.6** <u>No Withdrawal Of Capital Contributions</u>. Except upon the dissolution and liquidation of the LLC as set forth herein, no Member shall have the right to withdraw its capital contributions. Furthermore, no interest shall be paid upon any member's capital account.

**Section 5.7** <u>Maintenance of Capital Accounts</u>. An individual capital account shall be maintained for each LLC Member consisting of the member's capital contributions and (1) increased by that member's share of LLC profits, (2) decreased by that member's share of LLC losses, and (3) further adjusted as required or allowed by the Internal Revenue Code (Title 26 of the United States Code) and / or all published Treasury Regulations (Title 26 of the Code of Federal Regulations). In all cases, the capital accounts of the members shall be accounted for in accordance with the Internal Revenue Code (Title 26 of the United States Code) and or all published Treasury Regulations (Title 26 of the Code of Federal Regulations).

## ARTICLE VI
## ALLOCATIONS AND DISTRIBUTIONS

**Section 6.1** <u>Allocations to Capital Accounts</u>. Except as may be required by the Internal Revenue Code (Title 26 of the United States Code) or the Treasury Regulations (Title 26 of the Code of Federal Regulations) or this Operating Agreement, net profits, net losses, and other items of income, gain, loss, deduction and credit of the LLC shall be allocated among the Members ratably in proportion to each Member's LLC Unit Percentage. For example, if a Member has an LLC Unit Percentage of 45%, he or she shall be allocated 45% of all profits or losses (and other allocation items) for any given tax year.

   a. Notwithstanding the foregoing, no item of loss or deduction of the LLC shall be allocated to a Member to the extent such allocation would result in a negative balance in such Member's capital account if other Members then have positive balances in their capital accounts. Such loss or deduction shall be allocated first among the Members with positive balances in their capital accounts in proportion

to (and to the extent of) such positive balances and thereafter to Members in accordance with their Unit Percentages.

**Section 6.2** Tax Allocations. In the case of any special tax allocations allowed under the Internal Revenue Code or Treasury Regulations, the method of allocation and formula determined by the Tax Matters Partner shall be followed so long as it complies with state law, the Internal Revenue Code, the Treasury Regulations, and fairly treats each Member. The method of tax allocation selected by the Tax Matters Partner shall be presumed to be "fair to all the members" and any Member or party challenging said allocation on these grounds shall bear the burden of proof.

**Section 6.3** Distributions. The LLC Members, by resolution issued pursuant to this agreement, may make distributions to the Members from time to time in amounts it deems appropriate; however, no distribution shall be declared or made if, after giving it effect, the LLC would not be able to pay its debts as they become due in the usual course of business or the LLC's total assets would be less than the sum of its total liabilities.

**Section 6.4** Family Partnership Savings Provision. Notwithstanding anything in this Operating Agreement to the contrary, should any provision of this Operating Agreement, or any act of the parties, result in violation of the family partnership provisions of Internal Revenue Code Sec. 704(e) (as amended) or the regulations and cases thereunder, the Members may amend this Agreement, or take any other actions reasonably necessary to prevent or correct such violation.

## ARTICLE VII
## TRANSFERS OF UNITS; WITHDRAWAL, DEATH, REMOVAL OF MEMBER

**Section 7.1** Transfer of LLC Units. No Member shall have the right to sell, convey, assign, transfer, pledge, grant a security interest in or otherwise dispose of all or any part of its LLC Units other than as follows:

a. Only upon the following conditions may an LLC Member assign, pledge or grant a security interest in its LLC Units: (a) the assignment, pledge or security interest shall not entitle the assignee, pledgee or security interest holder to participate in the management and affairs of the LLC, to become a Member, nor to vote the Member's LLC Units and (b) such assignee, pledgee, or security interest holder is only entitled to receive the distributions the Member would otherwise be entitled to absent the assignment, pledge, or security interest.

b. To another LLC Member. Members may freely sell, convey or otherwise transfer their LLC Units to another Member without prior approval of the LLC Members.

c. To non-LLC Members. Subject to other provisions in this section, no Member shall be entitled to sell, convey or otherwise transfer its LLC Units to a non-LLC Member without a prior affirmative majority vote in interest of LLC Members. Prior to the vote of LLC Members upon a proposed sale, the Member seeking authorization of the sale or transfer of its LLC Units shall provide all other LLC Members with written documents detailing the exact terms of the proposed sale.

**Section 7.2** Withdrawal Of A Member.

a. Members shall have the unilateral right to resign or withdraw at any time from the LLC.

b. A Member is required to give thirty (30) days written notice to each of the other LLC Members to initiate a withdrawal. In this notice, the withdrawing Member shall state an effective date for his or her withdraw and said date must be at least thirty (30) days after delivery of notice to all other LLC members and be the last day of a month (i.e., the 30th or the 31st). Upon receipt of said notice, the remaining LLC members shall cause a reasonably prompt preparation of financial statements for the LLC as of the effective date of withdrawal for said Member.

c. Upon withdrawal, the withdrawing Member shall receive, in exchange for his or her LLC Units, the Withdrawal Compensation Amount to be paid within 2 years of the effective date of the Member's withdrawal. The payments shall be made in two equal installments payable at the annual anniversary of the effective date of withdrawal with no interest being due nor owing upon the outstanding amount.

d. The "Withdrawal Compensation Amount" is defined herein as 100% of the withdrawing member's capital account.

e. Should the LLC fail to perform upon its obligations under this section to make payments to a withdrawing Member when due, the LLC shall, in addition to any other remedies the withdrawing Member may possess, be liable to the withdrawing Member for interest upon the amount of any deficiency at the rate of 10% per annum (compounded annually) computed from the date that said deficient payment was due to the withdrawing Member under this agreement.

f. Upon withdrawal, the withdrawing Member shall have no continuing obligations to the LLC other than pursuant to state law, this Agreement or other applicable laws or such obligations as expressly assumed by such Members.

g. A withdrawing Member shall retain the right to vote as an LLC member up until the effective date of his or her withdrawal, at which time, the withdrawing Member's LLC Units shall be considered transferred back to the LLC and the person who has withdrawn shall no longer be considered a member of the LLC. If a withdrawing Member was also a "manager" of the LLC, the withdrawing Member shall resign as a manager immediately upon giving notice of to the other LLC members of his or her intent to withdraw.

**Section 7.3** Death Of A Member.

a. Upon the death of a Member, the remaining LLC members shall cause a prompt preparation of financial statements for the LLC as of the end of the month in which the Member died which shall be the effective date of death for the deceased Member for accounting purposes under this agreement. For purposes of this section, if LLC Units are titled in the name of a revocable trust, the trustee of said revocable trust shall be treated as the Member.

b. The estate of the deceased Member (or his revocable trust if the LLC Units were so titled) shall receive, in exchange for his or her LLC Units, the Death Compensation Amount to be paid within 3 years of the effective date of the

Member's death. The payments shall be made in three equal installments payable at the annual anniversary of the effective date of death with <u>no</u> interest being due nor owing upon the outstanding amount.

c.  The "Death Compensation Amount" is defined herein as an amount agreed upon between a majority in interest of the remaining LLC members and the estate of the deceased Member (or his or her revocable trust should the LLC Units been titled in its name) as the fair market value of the deceased Member's LLC Units. Should the parties be unable to agree upon a value for the deceased Member's LLC Units, they shall resolve the matter by way of arbitration. The arbitration shall be held in Des Moines, Iowa or any other place agreed to by the parties. . The arbitration shall be conducted in accordance with the rules promulgated by the American Arbitration Association. The arbitrator shall be asked to determine the fair market value of the deceased Member's LLC Units should the enterprise be sold on the open market, between a willing buyer and a willing seller, in a commercially reasonable manner upon the effective date of death. If the Members cannot agree on an arbitrator within ninety (90) days of the request for arbitration, then the estate of the deceased Member and the other LLC Members shall each select an arbitrator (the remaining Members select an arbitrator and the estate of the deceased Member selects an arbitrator), and those two arbitrators shall select a third arbitrator within sixty (60) days. The arbitration shall be completed within two hundred and ten (210) days after either party serves notice requesting arbitration. The deceased member's estate shall pay the cost/fees of all arbitrators. The deceased Member's compensation from the LLC shall cease after thirty (30) days from the date of his or her death.

d.  Should the LLC fail to perform upon its obligations under this section to make payments to a deceased Member's estate or revocable trust (as the case may be) when due, the LLC shall, in addition to any other remedies may possess, be liable to the estate of the deceased Member (or his or her revocable trust, as the case may be) for interest upon the amount of any deficiency at the rate of 10% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

e.  Upon death, the estate of the deceased Member (or his or her revocable trust, as the case may be) shall have no continuing obligations to the LLC other than pursuant to state law, this Agreement or other applicable laws or such obligations as expressly assumed by said Member.

**Section 7.4** <u>A Member Who Divorces.</u>

a.  If a Member or his or her spouse files for divorce, the Member shall immediately notify the remaining Members and the Manager of the divorce proceedings.

b.  The LLC has ninety (90) days in which to decide to repurchase the divorcing Members shares as set forth herein and notice of the LLC's decision shall be provided to the divorcing member. This requires a majority vote in interest of the LLC Members, excluding the divorcing Members interests. The divorcing Member may not participate in this vote and nor may his or her shares be consider in the calculation of what constitutes a majority vote.

c. Upon notification of divorce proceedings, the LLC members shall cause a prompt preparation of financial statements for the LLC as of the end of the month in which the notice was received for accounting purposes under this agreement. For purposes of this section, if LLC Units are titled in the name of a revocable trust, the trustee of said revocable trust shall be treated as the Member.

d. The Member (or his revocable trust if the LLC Units were so titled) shall receive, in exchange for his or her LLC Units, the Divorce Compensation Amount to be paid within three (3) years of the effective date of the entry of the Member's divorce decree. The payments shall be made in three equal installments payable at the annual anniversary of the effective date of divorce decree with no interest being due or owing upon the outstanding amount.

e. The "Divorce Compensation Amount" is defined herein as an amount agreed upon between the divorced member and the remaining LLC members as the fair market value of the divorced Member's LLC Units. Should the parties be unable to agree upon a value for the divorced Member's LLC Units, they shall resolve the matter by way of arbitration. The arbitration shall be held Des Moines, Iowa or any other place agreed to by the parties. The arbitration shall be conducted in accordance with the rules promulgated by the American Arbitration Association. The arbitrator shall be asked to determine the fair market value of the divorced Member's LLC Units should the enterprise be sold on the open market, between a willing buyer and a willing seller, in a commercially reasonable manner upon the effective date of the divorce. If the Members cannot agree on an arbitrator within ninety (90) days of the request for arbitration, then the divorced Member and the other Members shall each select an arbitrator (the remaining Members select an arbitrator and the divorced Member selects an arbitrator), and those two arbitrators shall select a third arbitrator within sixty (60) days. The arbitration shall be completed within two hundred and ten (210) days after either party serves notice requesting arbitration. The divorced member shall pay the cost/fees of all arbitrators.

f. Should the LLC fail to perform upon its obligations under this section to make payments to a divorced Member or revocable trust (as the case may be) when due, the LLC shall, in addition to any other remedies may possess, be liable to the divorced Member (or his or her revocable trust or ex-spouse, as the case may be) for interest upon the amount of any deficiency at the rate of 10% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

g. Upon the entry of the divorce decree, the divorced Member (or his or her revocable trust or ex-spouse, as the case may be) shall have no continuing obligations to the LLC other than what is provided by state law, this Agreement or other applicable laws or such obligations as expressly assumed by said Member.

**Section 7.5** Removal Of A Member.

a. A Member may be involuntarily removed from the LLC only under the following circumstances: substantial non-performance of required services. A Member may

be involuntarily removed from the LLC and his or her interests in the LLC terminated upon an affirmative vote of seventy-five (75%) of the Members of the LLC (not based on interests in the LLC, but based on the actual number of its Members) is required to remove a Member and terminate his or her interests in the LLC..

b. In the case of a removal for failure to perform required services, forty-five (45) days prior to any vote to remove, the other LLC Members shall cause a written notice to be issued to the Member in question specifically stating the instances, tasks and responsibilities the non-performing member has failed to perform and setting forth how that member is to cure his or her failure to adequately perform. The non-performing member shall have thirty (30) days to cure his or her non-performance from the receipt of the notice. The notice shall also state that the other LLC Members shall bring to a vote of the LLC a motion to remove said non-performing Member in  forty-five (45) days for unsatisfactory performance of the required services  if the non-performing member fails to cure his or her non-performance within thirty (30) days. The other LLC Members shall then give the Member in question a good faith opportunity to cure the deficiencies in performance of services prior to the vote of removal. The period of this good faith opportunity to cure need not extend beyond thirty30 days. If the Member in question cures his or her non-performance within thirty 30 days of receiving the aforementioned notice, then the motion pending before the LLC Members for removal shall be withdrawn.

c. If, after complying with the above notice and cure provisions, an affirmative vote of majority in interest of LLC Members is made to remove the Member in question, then, as of that moment, this person shall no longer be entitled to exercise any rights, powers or privileges as a Member and his or her LLC Units shall be considered redeemed by the LLC.

d. Upon the affirmative vote of majority in interest of LLC Members to remove a Member, the remaining LLC members shall cause a prompt preparation of financial statements for the LLC as of the end of the month in which the resolution was passed by the LLC Members removing said Member and this shall be the effective date of removal for the Member for accounting purposes only under this agreement.

e. Immediately upon the date of the vote removing a member, the removed member shall no longer receive any compensation from the LLC.

f. The removed Member shall receive in exchange for his or her LLC Units the Removal Compensation Amount to be paid within 3 years of the effective date of the Member's removal. The payments shall be made in three equal installments payable at the annual anniversary of the effective date of removal with no interest being due or owing upon the outstanding amount.  The "Removal Compensation Amount" is defined herein as an amount agreed upon between a majority in interest of the remaining LLC members and the removed Member as the fair market value of the removed Member's LLC Units. Should the parties be unable to agree upon a value for the removed Member's LLC Units, they shall resolve the matter by way of arbitration.  The arbitration shall be held in Des Moines, Iowa or in any other location agreed to by the parties. The arbitration shall be conducted

in accordance with the rules promulgated by the American Arbitration Association. The arbitrator shall be asked to determine the fair market value of the removed Member's LLC Units should the enterprise be sold on the open market, between a willing buyer and a willing seller, in a commercially reasonable manner upon the effective date of the removal. If the Members cannot agree on an arbitrator within ninety (90) days of request for arbitration, then the removed Member and the other Members shall each select an arbitrator (the remaining Members select an arbitrator and the removed Member selects an arbitrator), and those two arbitrators shall select a third arbitrator within sixty (60) days. The arbitration shall be completed within two hundred and ten (210) days after either party serves notice requesting arbitration. The removed member shall pay the cost/fees of all arbitrators.

g.   Should the LLC fail to perform upon its obligations under this section to make payments to a removed Member when due, the LLC shall, in addition to any other remedies may possess, be liable to the removed Member for interest upon the amount of any deficiency at the rate of 10% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

## ARTICLE VIII
## DISSOLUTION OF THE COMPANY

**Section 8.1** Dissolution. The LLC shall be dissolved upon the occurrence of either of the following events (each such event, a "Liquidation Event"):

   a.   an affirmative vote of seventy-five (75%) of the Members of the LLC ; or
   b.   the entry of a decree of judicial dissolution under state law to dissolve the LLC.

No other event--including (but not limited to) the withdrawal, removal, death, insolvency, liquidation, dissolution, expulsion, bankruptcy, or physical or mental incapacity of a Member--shall cause the existence of the LLC to terminate.

**Section 8.2** Liquidation.

   c.   Should a Liquidation Event occur, the LLC shall then be liquidated and its affairs shall be wound up--including preparation of final financial statements and an accounting--by (or at the direction of) the Managers. All proceeds from the liquidation shall be distributed in accordance with state law, and all LLC Units shall, thereafter, be canceled. Distributions to the Members shall be made in accordance, and proportion, with the Members' relative Capital Account balances.
   d.   Final distributions to Members shall not be made until all liabilities have been satisfied and any contingent claims against the LLC have been resolved.
   e.   Upon the completion of the liquidation and distribution of the LLC's assets, the LLC shall be terminated and the Managers shall cause the

Company to execute and file a certificate of cancellation in accordance with state law.

## ARTICLE IX
## Exculpation Of Liability; Indemnification

**Section 9.1** Exculpation of Liability. Unless otherwise provide by law or expressly assumed, a person who is a Member or Manager, or both, shall not be liable for the acts, debts or liabilities of the LLC to third-parties--i.e., persons other than the LLC or LLC Members.

**Section 9.2** Indemnification. Except as otherwise provided in this Article, the LLC shall indemnify any Member or Manager (and may indemnify any employee or agent) of the LLC who was or is a party or is threatened to be made a party to a potential, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative, and whether formal or informal, other than an action by or in the right of the LLC, by reason of the fact that such person is or was a Member, Manager, employee or agent of the LLC. Indemnification shall be limited to expenses, including attorney's fees, judgments, penalties, fines, and amounts paid in settlement actually and reasonably incurred by such person in connection with the action, suit or proceeding, if, **and only if**, the person acted in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances. For persons other than Members or Managers of the LLC, indemnification shall only be made after an affirmative vote of a majority in interest of LLC Members.

## ARTICLE X
## MISCELLANEOUS

**Section 10.1** Amendment of Operating Agreement. This Agreement may be amended by, and only by, a written instrument executed by an affirmative vote in interest by LLC members of LLC Unit in excess of 50% (i.e. 50.1% or greater), except an affirmative vote of seventy-five (75%) of the Members of the LLC is required to amend this Agreement with respect to Removal Of A Member, section 7.5, or to dissolve the LLC, section 8.1.

**Section 10.2** Successors. This Agreement shall be binding as upon all successors in interest of the Members which includes, but is not limited to, executors, personal representatives, estates, trustees, heirs, beneficiaries, assignees, nominees, and creditors of the Members.

**Section 10.3** Counterparts. This Agreement may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart.

**Section 10.4** Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa. Each Member, by signing this Agreement, hereby submit to the personal and subject matte jurisdiction in the State of Iowa of any dispute between or among the Members. the LLC, and the LLC Managers connected to or regarding the business of, or investment in. the LLC.

**Section 10.5** Severability; Standard for Interpretation. If it shall be determined by a court or other competent body that any provision or wording of this Agreement shall be invalid or unenforceable under state or other applicable law, such invalidity or unenforceability shall not invalidate the entire Agreement. Whenever two or more interpretations of the provisions or wording of this Agreement shall be possible, the interpretation or construction which leads to the enforcement and validity of any provision of this Agreement shall be favored and deemed to be the intended interpretation of the parties to this Agreement.

## ATTACHMENT 1
### MEMBER CAPITAL CONTRIBUTIONS AND REQUIRED SERVICES

### TABLE 1--REQUIRED CAPITAL CONTRIBUTIONS

| Member Name | Total Initial Capital Contribution | Cash Capital Contribution | Non-cash Capital Contribution |
|---|---|---|---|
| Eric Busick | $ 33.33 | $ 33.33 | |
| Heidi Garrett | $ 28.33 | $ 28.33 | |
| Robert Levinstein | $ 33.33 | $ 33.33 | |
| Justin Cook | $ 5.00 | $ 5.00 | |

### TABLE 2--REQUIRED SERVICES OF MEMBERS

| Member Name | Required Service Time | Description of Services |
|---|---|---|
| Eric Busick | part-time | Software development and web site management. |
| Heidi Garrett | part-time | Marketing and sales. |
| Robert Levinstein | part-time | Marketing, sales and strategic planning. |
| Justin Cook | part-time | On going consulting on search engine position and purchase of web traffic, including on going monitoring an adjusting of search engine strategy. |

IN WITNESS WHEREOF, the undersigned have duly executed this Operating Agreement as of the date first above written as Members:

MEMBER                          MEMBER

_____         _____
Eric Busick                     Heidi Garrett

MEMBER                          MEMBER

_____         _____
Robert Levinstein               Justin Cook

**EXHIBIT 3**

FROM :SHEFF LAW          FAX NO. :6172278033          Dec. 29 2004 03:02PM P3/4

MSN Hotmail - Message                                    Page 1 of 2

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat     **Sign Out**     Web Search     Go

**Hotmail**          Today | Mail | Calendar | Contacts

jrcook@hotmail.com    Messenger: **New Message** ▾                    Free Newsletter |

| Reply | Reply All | Forward | X Delete | Junk | Put in Folder ▾ | Print View | Save Address

| From : | Bob Levinstein <rlevinstein@cruisecompete.com> | ◄ | ◄ | X | CruiseComp... | Inbox |
| Reply-To : | rlevinstein@cruisecompete.com |
| Sent : | Monday, November 8, 2004 6:13 PM |
| To : | jrcook@hotmail.com |
| CC : | ebusick@cruisecompete.com, agarrett@comcast.net |
| Subject : | Buy-Out Offer |

Attachment : Buyoutagreement.doc (0.02 MB)

MIME-Version: 1.0
Received: from ns1.tropicalport.com ([67.15.24.15]) by mc5-f40.hotmail.com with Microsoft SMTPSVC(5.0.2195.6824); Mon, 8 Nov 2004 10:13:56 -0800
Received: from webmail.cruisecompete.com (localhost.localdomain [127.0.0.1])by ns1.tropicalport.com (8.12.11/8.12.11) with ESMTP id IA8IDskB001025;Mon, 8 Nov 2004 12:13:54 -0600
X-Message-Info: JGTYoYF78jFAIWV3mZUp2zmusP3hN12P
User-Agent: SquirrelMail/1.4.3a
X-Mailer: SquirrelMail/1.4.3a
References:
Return-Path: rlevinstein@cruisecompete.com
X-OriginalArrivalTime: 08 Nov 2004 18:13:56.0632 (UTC) FILETIME=[B64F3980:01C4C5BE]


Justin:

I hope all goes well with you.

After some discussion, Heidi, Eric and I would like to offer you $5,000 for your CruiseCompete LLC units.

We haven't seen a significant contribution from you over the past year, and we don't believe that this is likely to change.  The current situation
has the three of us doing all the work while continuing to pay you, and we're not willing to let that continue.

Our consensus is that $5,000 is a fair buy-out offer.  This takes into account the work you did early on related to SEO and the time you spent reviewing the membership agreement a few months ago.  Along with the regular monthly checks you've been receiving, we think is very generous compensation for the limited time you've put in.

We can get you a check within the next week or so, and make the transfer of your shares back to the company effective January 1, 2005 so you will still get a December partnership check. (probably $600).

As you evaluate this offer, I would like you to consider that our Operating
Agreement gives us a lot of other options for dealing with this situation.

We can, for example, do any or all of the following:

1. Issue additional ownership units to the other three partners, diluting
your ownership to essentially zero;

MSN Hotmail - Message                                          Page 2 of 2

2. Begin paying salaries based on work performed, which would effectively
eliminating most or all of the monthly partnership shares;

3. Follow the procedure to remove you for lack of performance. Note that
you would bear all of the costs for arbitration and travel and payments
wouldn't even start for a year after termination.

I'm sorry that this relationship hasn't worked out better for all of us.
I just hope you can take an objective look at the situation and see it
from our point of view.

This offer is good for one week. I have attached a draft buy-out
agreement for your review. Please feel free to give me a call or e-mail
me if you have any questions. Or you can simply sign, date and fax me
the
agreement and we'll get you out a check right away.

--
Bob Levinstein
CruiseCompete.Com
888-256-1750
888-256-1745 (fax)

Notice: Attachments are automatically scanned for viruses using McAfee

Get the latest updates from MSN

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat
© 2004 Microsoft Corporation. All rights reserved. TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  Anti-Spam Policy

# EXHIBIT 4

November 12, 2004

Mr. Justin Cook
Sheff Law Offices
Ten Tremont St. 7th Floor
Boston, MA 02108

Dear Mr. Cook:

Pursuant to section 7.5 of the Operating Agreement of CruiseCompete, LLC, this letter (sent to you via e-mail to both jrcook@hotmail.com and jcook@shefflaw.com on November 12, 2004 as well as to the above address) constitutes official notice that the majority of the Membership (consisting of Robert Levinstein, Eric Busick, and Heidi Garrett) believes that you have failed to perform required services.

Per the Operating Agreement, you have thirty (30) days from the issuance date of this letter to correct this failure.

Your initial responsibilities were to provide regular, ongoing consulting on search engine positioning, and the management of the purchase of web traffic.

Your efforts under the first task have been sporadic at best. Members have complained about the lack of organization in the information you have submitted as well as the impracticality of suggestions, and the majority membership is aware of no value the organization has derived from these efforts over the past year.

Your lack of attention to detail in managing the purchase of web traffic via pay-per-click search engines necessitated that this responsibility be handled by other members. The majority members are aware of no other projects related to the purchase of web traffic that you have brought to fruition.

You have also exhibited a general lack of planning and follow-through in all of your efforts.

In order to give you the broadest possible opportunity to correct your failure to perform, we place no strictures on the form of the remedial action. Any significant positive contribution to either revenue generation or cost savings over the next thirty (30) days will be considered, provided it is documented and submitted along with a detailed, credible action plan for you to carry out in 2005.

The majority membership group will be scheduling a vote to consider your removal as a member. The majority will base its decision on its evaluation of the written documentation you provide, so please be aware **that anything you wish us to consider must be submitted in writing.** To assist you in documenting this information, I have e-mailed you a form to be completed and submitted via e-mail to rlevinstein@cruisecompete.com by 5:00PM central time on December 20th, 2004. (Please call 888-256-1750 to verify receipt if you do not receive a receipt via e-mail). The form is an Excel document that includes detailed comments and should be self-explanatory. If you did not receive the form, please contact me immediately and I will resend it to you. If you have any questions about the form, please submit them to the above e-mail address prior to December 13th, and they will be answered via e-mail no later than December 17th.

If you wish to include any contributions you make between the end of the 30-day period (i.e., December 11th) and December 20th we will consider these as well.

Should we not receive the completed documentation by December 20th, we will understand that you have chosen not to contest your removal.

Sincerely,

Robert A. Levinstein
Managing Partner
CruiseCompete, LLC

Cc: Heidi Garrett, Eric Busick, Mark S. Levinstein (Williams & Connelly)