UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| JUSTIN COOK,<br><br>      Plaintiff,<br><br>      v.<br><br>CRUISECOMPETE, LLC,<br>HEIDI ALLISON-GARRETT,<br>ERIC BUSICK, and<br>ROBERT A. LEVINSTEIN,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05-CV-10443-JLT<br>)<br>) ORAL ARGUMENT REQUESTED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### INTRODUCTION

On or about February 4, 2005 Plaintiff Justin Cook ("Cook") filed a ten-Count Verified Complaint and Demand for Jury Trial in the Superior Court of Suffolk County, Massachusetts, against out-of-state defendants CruiseCompete, L.L.C., Heidi Allison Garrett, Eric Busick, and Robert A. Levinstein (collectively, the "Defendants"). The Verified Complaint purports to allege breaches of fiduciary duty, fraud, fraudulent inducement to enter a contract, and violations of the Massachusetts Unfair Trade Practices statute, Mass. Gen. L. ch. 93A.[1] The Verified Complaint seeks actual damages, treble damages, attorneys' fees and interest.

---

[1] The Verified Complaint also includes a Shareholders Derivative Claim against the Defendants. Complaint ¶¶ 67-73.

1

The Verified Complaint itself does not include an *ad damnum* clause or an estimation of the damages suffered by the Plaintiff. In the Suffolk County Superior Court, the plaintiff and his attorney are required to itemize and estimate plaintiff's damage claims in a Civil Action Cover Sheet that must be filed with the Complaint.

The Civil Action Cover Sheet, completed by the plaintiff's attorney and filed in the state court, states that the plaintiff seeks money damages of $400,000 against the defendants for his tort claims, and the plaintiff is asking the court to treble (or triple) the damage award in his favor.[2] The plaintiff and his attorney filed the civil action cover sheet on or about February 3, 2005 and they estimated plaintiff's *single* damages claim to be a total of $400,000. Both plaintiff and his counsel are members of the Massachusetts bar, and they were bound by principles of legal ethics when they estimated plaintiff's damage claim. Therefore, according to the plaintiff and his counsel, as of February 3, 2005 the plaintiff's best estimate of his damages claim was $1.2 million plus attorneys fees, interest, and costs.

As conceded in plaintiff's Memorandum:

> "For the purposes of removal, the determination of the amount in controversy is not always lucid. Normally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. See *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 82 L. Ed. 845, 58 S.Ct. 586 (1938)).

The defendants, citizens of states other than Massachusetts, having been sued by the plaintiff, a Massachusetts resident, for more than $1.2 million, removed the case to federal court. The defendants did not quote the content of the plaintiff's Civil Action Cover Sheet in the text of the

---

[2] The Civil Action Cover Sheet is explicit that in that "form, disregard double or treble damage claims; indicate single damages only." Following those instructions, plaintiff and his counsel estimated plaintiff's single, compensatory damages as totaling $400,000.

notice of removal, but they attached it to the notice and the defendants' estimate of the amount in controversy was based in part on the plaintiff's estimate.

Now, we have the bizarre situation that the plaintiff who has alleged over $1.2 million in damages, in a desperate effort to avoid the motions to dismiss and to transfer filed by defendants and to force out-of-state defendants back into state court, now seeks to contend that there is a legal certainty that the damages he will be awarded cannot exceed $75,000! Pursuant to the above-quoted language from the United States Court of Appeals in *Spielman*, the only way this court could remand the case would be if it were to find that the damage claim asserted by plaintiff in the state court was not made in good faith and as a legal certainty a state court would be *prohibited* from awarding the plaintiff any amount over $75,000. There is no basis for any such finding. Not only are plaintiff and his counsel apparently unwilling to argue to this court that their previous damage estimate was not made in good faith, *nowhere in the plaintiff's motion or memorandum do plaintiff or his counsel even disclose to this court their previous estimate that plaintiff's damages exceed $1.2 million!* Rather, plaintiff attempts to mislead this court by citing, out-of-context, estimates made by the defendants that concern a related arbitration proceeding.

This is precisely the situation for which federal court removal jurisdiction was created. The plaintiff seeks to pursue claims in state court against out-of-state defendants, before a state court judge and a state court jury. The plaintiff has told the state court that he believes a state court jury will award him over $1.2 million dollars in damages and attorneys fees. In such cases, federal law allows the out-of-state defendants the protection of removal to have their claims decided before a federal judge and a federal jury. The plaintiff, having estimated the damages he

seeks at over $1.2 million, cannot be heard to come before this court seeking remand based on a legal certainty that he cannot recover more than $75,000.

If this case were to be remanded to state court, plaintiff would be free to continue to seek damages in excess of $1.2 million from the state court judge and jury. Either the plaintiff's present representations to the court are made in bad faith or his prior representations to the state court were made in bad faith (or both). As a result, there is absolutely no basis for this court to state to a legal certainty that plaintiff's claims do not exceed $75,000 and this court should order the plaintiff to reimburse the defendants for their legal fees incurred in having to respond to the plaintiff's motion to remand. In further support of their opposition, Defendants submit the affidavit of Daniel C. Hohler.

Argument

I.    The Standard.

It is well-settled that determination of the amount in controversy in a diversity case pursuant to 28 U.S.C. §1332 is generally controlled by the amount of damages as alleged by the plaintiff at the time of the filing of the complaint, if the claim is apparently made in good faith. Where the amount is challenged, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Spielman v. Genzyme Corp.*, 251 F.3d 1,5 (1st Cir. 2001); *see also Radlo v. Rhone-Poulenc, S.A.* 241 F.Supp.2d 61 (D. Mass. 2002)(incumbent upon removing defendant to establish "a legal certainty that the plaintiff's damages, *if the claims succeed fully*, would rise above the threshold.") (emphasis supplied).

As a first matter, Cook seeks damages for fraudulent inducement, fraud, and breach of fiduciary duty. One issue concerns the proper valuation of plaintiff's five percent interest in

4

CruiseCompete, which is a hotly-contested issue and is obviously a question of fact to be determined based on fact testimony and expert testimony. Plaintiff has not asserted his views about the proper valuation of the company, but if the company is worth more than $1.5 million, that alone would yield damages to Cook in excess of $75,000, without considering claims of fraud, treble or punitive damages, attorneys fees or interest, all of which are sought by plaintiff Cook in his Verified Complaint.

Curiously, Cook, after claiming damages of $400,000 in the Superior Court (which if trebled could theoretically exceed $1,200,000), now seeks to attack his own estimation of his damages. By implication, therefore, Cook apparently asserts that his estimation of damages was not undertaken in good faith. Defendants have not located a Massachusetts District Court case or a First Circuit case in which a case has been remanded in a situation where the plaintiff has expressly alleged damages in excess of the jurisdictional amount and then sought to contradict this amount. However, commentators have stated that in such a situation that the *plaintiff* actually should have to demonstrate that there is a legal certainty that the amount in controversy cannot exceed $75,000 as a matter of law:

> As the numerous cases on the subject make clear, when the amount in controversy claimed in the plaintiff's state court complaint exceeds $75,000, the complaint generally is determinative of the amount in controversy issue for federal removal jurisdiction purposes, *unless the plaintiff seeks remand to the state court and demonstrates that despite the allegations of the complaint the amount recoverable by the plaintiff cannot exceed $75,000 as a matter of law.* When the complaint states that more than $75,000 is in issue, the removing defendant obviously will not challenge the jurisdictional sufficiency of the amount in controversy. The judicial standard applied in removed cases to test the jurisdictional sufficiency of the amount in controversy when the plaintiff's complaint claims more than $75,000 is a simpler one, involving less strict scrutiny, than that applied to suits brought originally in federal court. This is because there is virtually no possibility that the plaintiff, who chose to bring the action in a state court, and presumably would prefer to remain there, has exaggerated the size of the claim in order to create federal

*subject matter jurisdiction...* 14C Fed. Prac. & Proc. Juris.3d, Wright & Miller, § 3725 (emphasis supplied).

Nevertheless, under the above standards, the motion to remand should be denied for the reasons stated in more detail below inasmuch as: (1) Cook has expressly sought damages in the Massachusetts Superior Court of $400,000 (which if trebled could theoretically reach $1,200,000) upon which defendants rely and which should control; and (2) Defendants have met their burden in demonstrating that there is not a legal certainty that Cook's damages will not exceed the jurisdictional amount of $75,000, and in fact if successful on his claims as alleged the damages could exceed $75,000, solely based upon Cook's pleadings.

> II. The Motion To Remand Should Be Denied Because Cook Has Alleged $400,000 Of Tort Damages In The Massachusetts Superior Court Via His Civil Action Cover Sheet, In Excess Of The $75,000 Amount In Controversy Requirement, And Defendants Have Demonstrated The There Is Not A Certainty That The Damages Will Not Exceed $75,000.
>
> A. The Motion To Remand Should Be Denied Because Cook Has Expressly Sought $400,000 In Base Compensatory Damages.

Cook's claim that Defendants' assertion of jurisdictional amount is "unsupported" is belied by Cook's request for $400,000 in his Civil Action Cover Sheet in the Massachusetts Superior Court, which if trebled would theoretically equate to $1,200,000 in damages, upon which defendant is entitled to rely and upon which they do rely. A copy of Cook's Civil Action Cover sheet is attached to the Affidavit of Daniel C. Hohler as Exhibit 1, and notably was attached to the Notice of Removal in this action. Every complaint in the Massachusetts Superior Court *must* have accompanying with it a Civil Action Cover Sheet stating the amount of damages sought which is filed *with* the complaint and served with process upon the defendants. *See* Mass. Superior Court Rule 29. Civil Action Cover Sheets are indicative of the amount in controversy alleged in the complaint. *See Colonial Wholesale Beverage Co. v. Labatt U.S.A.,*

6

*LLC*, 2004 WL 1202439, n.3 (D.Mass.)(amount in controversy met where Civil Action Cover sheet stated amount of damages in excess of jurisdictional amount.); *National Media Corporation v. Digiovanna*, 1994 WL 268260 (E.D.Pa.)(amount in controversy requirement met where damages sought in excess of the amount of controversy requirements in state civil action cover sheet).

The decision of the United States Court of Appeals for the First Circuit in *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1 (1st Cir. 1995), cited by the plaintiff, makes it clear that plaintiff's motion to remand must be denied. In *Coventry*, the plaintiff filed the complaint and alleged damages in excess of the amount in controversy requirement. 71 F.3d at 4. As the Court explained in *Coventry*, the law is settled that:

> For the purpose of establishing diversity jurisdiction, the amount in controversy is determined by looking to the circumstances at the time the complaint is filed. *Thesleff v. Harvard Trsut Co.*, 154 F.2d 732, 732 n. 1 (1st Cir. 1946) (noting that "'federal jurisdiction depends upon the facts at the time suit is commenced, and subsequent changes . . . in the amount in controversy [will not] divest [sic] it"); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702 at 28-29 n. 31 (1985); *Watson v. Blankinship*, 20 F.3d 383, 387 (10th Cir. 1994); *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990); see *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989) (noting that for determining diversity of citizenship, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.")

*Id.* at 4.

As explained in *Coventry*, the amount in controversy is determined by reference to the amount alleged by the plaintiff:

> Moreover, it has long been the rule that a court decides the amount in controversy from the face of the complaint, "unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'"

*Id.* In this case, the amount alleged by the plaintiff in his Civil Action Cover Sheet which was filed with the Complaint constitutes the reference point from which the amount in controversy

7

must be determined. The $400,000 of single damages alleged, combined with the Complaint's claims for treble damages and attorneys fees, means that plaintiff alleged damages in excess of $1.2 million. As the First Circuit explained in *Coventry*, relying in large part on the Supreme Court decision in the "seminal case of *St. Paul*," even if subsequent events show the amount in controversy to be less or if the plaintiff reduces the amount he claims below the amount in controversy requirement, the court does not lose its jurisdiction:

> In *St. Paul*, the plaintiff-employer initiated a state court action against the defendant-insurer for payment of workers compensation benefits. The plaintiff alleged an amount of damages sufficient to permit the defendant to remove the case to federal court. Once in federal court, the plaintiff filed two amended complaints. Attached to the second amended complaint, which alleged the same amount of damages as originally claimed, was an exhibit detailing the damages; the exhibit revealed that the total sum of damages was no more than $1,380.89, an amount below the jurisdictional minimum (then $3,000). The court of appeals, *sua sponte*, took notice of the exhibit and directed a remand of the case, reasoning that the amount in controversy was less than the jurisdictional minimum and that "[t]he court cannot close its eyes to the obvious, nor go ahead with the trial of a cause of which it has no jurisdiction." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 90 F.2d 229, 230 (7th Cir. 1936).
>
> The Supreme Court reversed, noting that there was no evidence that, at the time the action was commenced, the plaintiff could have ascertained the actual sum of the damages, and that the later exhibit setting forth this sum did not undermine plaintiff's initial good faith. . . . Accordingly, the Court reasoned that the case fell comfortably within the rule that "subsequent reduction of the amount claimed cannot oust the district court's jurisdiction."

71 F.3d at 4-5 (citations omitted). The fact that plaintiff in this case received a letter from defendants' counsel which disagrees with the plaintiff's earlier damage estimate is certainly not sufficient to deprive this court of jurisdiction.

In fact, the First Circuit in the *Coventry* decision and the Supreme Court in *St. Paul* both went on to discuss precisely the problem presented here – a plaintiff seeking to manipulate or change the amount originally claimed in his complaint in order to prevent removal of his claim:

> The Court also noted that the removal posture of the case additionally bolstered the finding of good faith in claiming damages. Because the plaintiff initially filed in state court, it was unlikely that the amount claimed was meant to somehow confer federal jurisdiction. The Court reasoned that a defendant's right to remove was not to be "subject to the plaintiff's caprice" by subsequent events – whether or not such events are under plaintiff's control. . . . Thus, events occurring subsequent to removal, such as a stipulation, an affidavit, or an amendment that reduces the claim below the jurisdictional minimum, would not deprive the court of jurisdiction once it has attached.

71 F.2d at 5 n.4 (citations omitted).

Accordingly, where Cook has expressly sought $400,000 in single damages (to be trebled to $1.2 million as alleged in the Verified Complaint in the Superior Court, Defendants respectfully submit that the motion to remand should be <u>denied.</u>

> B. The Motion To Remand Should Be Denied Because It Was Not a Legal Certainty When the Complaint Was Filed that An Amount In Excess Of $75,000.00 Could Not Be Awarded

Defendants can demonstrate that it is not a legal certainty that Cook will receive less than $75,000 if successful in his claims. Cook had to seek damages of least $25,000 (and in fact seeks three times $400,000) in the Massachusetts Superior Court in order to avoid the possibility of a remand to the District Court division of the Trial Court in the Commonwealth of Massachusetts. *See* Hohler Aff., Exhibit 1. Additionally, Cook has sought treble damages and attorneys' fees pursuant to, among other counts, Mass. Gen. L. ch. 93A, which are includable in the determination of the amount in controversy. *See Spielman v. Genzyme Corp.*, 251 F.3d 1,5 (1st Cir. 2001)(attorneys' fees permitted by Mass. Gen. L. ch. 93A are to be factored into the determination of amount-in-controversy); *F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30 (D. Mass. 1995)(treble damages under Mass. Gen. L. ch. 93A are properly includable in amount-in-controversy analysis). If successful in all of his claims, which Defendants of course dispute, such damages based upon the Verified Complaint could exceed $75,000.00,

eliminating any argument that it is a legal certainty that Cook's damages will not exceed the jurisdictional amount. Accordingly, the jurisdictional amount in controversy requirement has been met and the motion should be <u>denied</u>.

      C.    Defendants' Damage Estimates Related Solely to the Proper Valuation of Plaintiff's Shares of CruiseCompete are Inapposite

It is clear from the Verified Complaint that there is a dispute between the plaintiff and the defendants concerning the proper valuation of the shares of CruiseCompete LLC. As a result of his ongoing breach of the Operating Agreement and his refusal to cure his breaches, plaintiff was removed as a member of the LLC as provided in the Operating Agreement. Contrary to plaintiff's claims, the LLC Operating Agreement is explicit that plaintiff had an obligation to continue to provide services to the LLC to maintain his ownership share in the LLC. In addition, the Operating Agreement is explicit that if there is a dispute concerning the valuation of the shares of a member who has been removed, that dispute must be decided in arbitration. Beyond all the claims asserted in his ten-count Verified Complaint, plaintiff has made it clear that he disputes the proper valuation of his shares. Therefore, defendants submitted that issue to arbitration in Iowa pursuant to the commercial rules of the American Arbitration Association, as required by the Operating Agreement. Plaintiff, as the removed member, is obligated by the Operating Agreement to pay all costs of the arbitration. The defendants, as the parties submitting the matter to arbitration, were required to estimate the amount of plaintiff's claim in order to establish the amount of the initial filing fee to be paid by the plaintiff. In that context, defendants expressed their view that plaintiff's shares were not worth in excess of $7,500. That estimation of the value of plaintiff's shares does not come close to establishing as a matter of law that all of plaintiff's claims for fraud, breach of fiduciary duty, treble damages, attorneys fees, and interest cannot possibly exceed $75,000. In addition, that letter to the American Arbitration

is precisely the type of "stipulation, . . . affidavit, or an amendment" that the First Circuit in *Coventry* and the United States Supreme court in *St. Paul* held could not deprive a federal court of jurisdiction. Cook's assertion that the Defendants' assessment of the value of his shares in CruiseCompete, LLC in December 2004 somehow mandates a remand is misplaced. Indeed, the concurrently proceeding arbitration only concerns the value of Cook's shares at the time of his removal from CruiseCompete, LLC. In contrast, Cook's Verified Complaint (although insufficiently pleaded as set forth in Defendants' previously filed motion to dismiss and in the alternative to transfer venue) would appear to encompass much different issues, including allegations of breach of fiduciary duty, fraud and violation of the Massachusetts Consumer Protection Act. In fact, Cook in his Verified Complaint claims that "CruiseCompete has been the subject of a potential buyout at a stock price greatly in excess of the current stock value of the Company" and that Defendants' suggested buy out price of $5,000 is "*substantially lower than the anticipated sale price to the potential buyer.*" (emphasis supplied) In fact, plaintiff and his counsel have valued his overall claims in an amount exceeding $1.2 million plus attorneys fees after trebling.

## CONCLUSION

As explained above, the position advocated by the plaintiff would stand the law of removal on its head and would be contrary to the decisions of the Supreme Court and the United States Court of Appeals for the First Circuit. In-state plaintiffs could assert multi-million dollar claims against out-of-state defendants in state courts. Then, if defendants removed plaintiffs' claims to federal court, but argued that the plaintiffs' claims were without merit, the plaintiffs could use defendants' arguments to remand the cases back to state courts, where the plaintiffs would still be seeking multi-million dollar damage awards from state court judges and juries. No

case law supports such a result. The plaintiff's request for remand, running directly contrary to the damage estimate submitted by plaintiff and his counsel in this case (a damage estimate that was not even disclosed by the plaintiff in his submission to this court), should be dismissed out-of-hand, and the plaintiff and his counsel should be ordered to reimburse the defendants for their attorneys fees and expenses incurred responding to the motion for remand.

WHEREFORE, for the aforementioned reasons Defendants respectfully submit that the motion to remand should be denied.

>  SPECIALLY APPEARING
>  DEFENDANTS CRUISECOMPETE LLC,
>  HEIDI ALLISON-GARRETT, ERIC
>  BUSICK AND ROBERT A. LEVINSTEIN,
>
>  By their attorney,
>
>  _/s/ Daniel C. Hohler_
>  Daniel C. Hohler (BBO#633065)
>  233 Needham Street, Suite 300
>  Newton, MA 02464
>  Tel: (617) 454-1450
>  Fax: (617) 454-1451
>  Email: dhohler@hohlerlaw.com

Dated: April 19, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 4/19/05